United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 7, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-50438
Summary Calendar
_____

ANICETO H. MORENO,

Plaintiff-Appellant,

versus

R.L. BROWNLEE,
ACTING SECRETARY OF THE ARMY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(USDC No. W-02-CV-229)

_____

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Aniceto H. Moreno ("Moreno") appeals the decision of the district court

which granted Defendant-Appellee, Acting Secretary of the Army-R.L. Brownlee's ("the Army")

motion for summary judgment dismissing Moreno's actions under the Age Discrimination in

Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA") and Title VII,

claiming wrongful termination of employment.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

DISCUSSION

I.     Statement of facts

Moreno was a Target Device Servicer at Fort Hood until his employment was terminated on June 25, 1999. He began working for the Army as a Welder's Helper in September 1982. At some point he developed carpal tunnel syndrome. On December 2, 1992, the Army proposed terminating Moreno because his physical condition rendered him incapable of performing his duties, and because the Army was unable to place him in another position. On February 3, 1993, the Army cancelled its notice of termination because Moreno's application for workers' compensation benefits had been approved. The efforts to locate a suitable position for Moreno continued while he received workers' compensation benefits. He received such benefits for approximately three years, during which time he did not work at Fort Hood. After the Civilian Personnel Office ("CPO") at Fort Hood could not find him a job after the first two years, the Department of Labor approved retraining for him, and he received training in drafting, mechanical drawing, computer-aided drafting, Microsoft, and all the related things which consist of working with a computer in doing architectural drawing.

In September 1995, Moreno returned to Fort Hood to work at the Directorate of Logistics. In 1997, his position was abolished due to a reduction in force, and he accepted reassignment to the Range Division. When he first started work at the Range Division, Moreno informed his supervisor that his carpal tunnel syndrome would not allow him to perform the majority of the tasks that a Target Device Servicer must perform. Moreno's physician had warned him that he should not do repetitive, stressful work with his hands and wrists, and that he should not lift objects weighing more than fifteen pounds. Moreno could perform some tasks of the Target Device Servicer Job like

2

operating the tower (which is done by computer) and ordering supplies. But the remainder of the job was beyond his capabilities because it involved a lot of lifting and pulling.

Because of Moreno's concerns about his ability to perform the job, the Army attempted to find another vacancy for him. There was even a committee which attempted to place employees with physical limitations in other jobs at Fort Hood, and Moreno's case went before this committee at least three times.

Moreno's supervisors in the Range Division also attempted to accommodate him by moving him to positions with duties that he could perform, though these were not authorized positions. After one of these moves, Moreno worked at the Sportsman's Range. This was not a permanent position, and there was no authorization for a civilian Target Device Servicer at the Sportsman's Range. The duties he performed, such as answering phones and the radio and taking messages, were not enough to justify a separate position. Moreno was proposed for termination in November 1998, because of his physical inability to perform the Target Device Servicer duties. The job relocation committee continued to look for another position for him, and no final action was taken on his termination until June 1999.

II.     Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia, 335 F.3d 493 (5th Cir. 2003). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir. 2003). A genuine

issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id. Questions of law are reviewed *de novo*. Id. The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). In employment discrimination cases, we focus on whether the defendant intentionally discriminated against the plaintiff. Grimes v. Texas Dept. of MHMR, 102 F.3d 137, 139 (5th Cir. 1996)

III.     Law and Analysis

         Discrimination based on age, race or national origin

         The district court found that Moreno failed to establish a prima facie case of discrimination because he could not show the existence of all of the four elements required for such. A plaintiff establishes a prima facie case of discrimination by showing: (1) he belongs to a protected class; (2) he was subjected to an adverse employment decision; (3) he was qualified for the position held or sought; and (4) the position was filled by someone outside the protected class, or those outside the protected class were treated more favorably. Ross v. University of Texas at San Antonio, 139 F.3d 521, 526 (5th Cir. 1998).

         The district court held that Moreno could not show element (3), that he was qualified for the position held or sought, because, as Moreno himself has shown through his concurrent disability discrimination claim, he was unable to physically perform the duties of the position of Target Device Servicer because of his carpal tunnel syndrome. He presented nothing more, the district court

4

continued, beyond his own subjective belief that he must have been discriminated against to support his claim.

As the district court correctly noted, a plaintiff's subjective belief, alone, is insufficient to establish a claim of discrimination. See Grimes, 102 F.3d at 139 (conclusory allegations, unsubstantiated assertions, and subjective beliefs are insufficient to support a discrimination claim and defeat summary judgment dismissal).

Moreno asserts that the Army would not retrain him and use the skills that he did possess because he was over the age of forty and he was Hispanic. However, he offers no support whatsoever for these allegations. Furthermore, the record shows that the Army, over a period of approximately seven years, made repeated attempts to retrain and accommodate Moreno in finding positions of employment that he could perform without aggravating his carpal tunnel syndrome. While Moreno was retrained and given a position that he could perform with the Directorate of Logistics, in September 1995, that position was eliminated in 1997 due to a reduction in force. Moreno has not proffered any evidence that the reduction in force was merely a pretext to discriminate against him. In fact, the Army did not terminate him in 1997 upon the reduction in force, but instead offered to reassign him to the Range Division as a Target Device Servicer, which he accepted. When Moreno reported for work at the Range Division, he informed his superiors that his carpal tunnel syndrome kept him from performing the majority of the tasks that a Target Device Servicer must perform. Moreno testified that he could not use a lawnmower, and at times not even open a jar. The job of Target Device Servicer, as Moreno himself has acknowledged, mainly involves heavy lifting, torquing and pulling, which his physician told him he should avoid. Notwithstanding that Moreno could not perform most of the tasks required of a Target Device Servicer, the Army

5

allowed him to retain the position and perform tasks that would not aggravate his condition while it searched for vacant positions that he could perform. In fact, the Army, through a committee it created to place employees with physical limitations into other jobs at Fort Hood, made at least three attempts to find him a suitable position, and finally moved him to the Sportsman's Range where he was only able to perform minimal tasks, such as answering the phones and taking messages, even though these duties were not enough to qualify as a total position. Finally, when the Army decided in November 1998, that it would terminate Moreno due to his inability to perform any of the tasks required for the open positions offered to him, it granted him at least three extensions on the effective date of his termination until June 1999 so that he could apply for VSIP[2] benefits and it could attempt to find him another position.

Based on the record, which clearly shows that the Army made a significant attempt to accommodate Moreno's disability, Moreno has not shown that the Army's proffered explanation for his termination, his inability to perform in the available positions offered, was merely a pretext for discriminating against him, and has thus failed to establish a prima facie case. Therefore, the district court was correct in granting the Army's motion for summary judgment dismissing Moreno's discrimination claims based on age, race, or national origin.

Discrimination based on disability

Moreno also alleges discrimination based on his disability, carpal tunnel syndrome, in that the Army denied his requested accommodations and eventually terminated his employment. The district court, however, in also dismissing this claim, found that Moreno's carpal tunnel syndrome does not qualify as a "disability" under the ADA, and thus he failed to establish a prima facie case.

---

[2] Voluntary Separation Incentive Pay pursuant to 5 U.S.C. § 5597.

To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(a) that he has a disability; (b) he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of his disability." Hamilton v. Southwestern Bell Telephone Co., 136 F.3d 1047, 1050 (5th Cir. 1998) (citing 42 U.S.C. § 12112(a)). The threshold issue that a plaintiff must establish is that he has a disability that is protected by the ADA. Id.; Ray v. Glidden Co., 85 F.3d 227, 228 (5th Cir. 1996). A disability, as defined by the ADA, is: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. Hamilton, 136 F.3d at 150; Ray, 85 F.3d at 228; 42 U.S.C. § 12102(2).

As the district court noted, while the ADA does not define "major life activities" or "substantially limits," the Equal Employment Opportunity Commission ("EEOC") has defined these two terms. "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996), cert. denied, 519 U.S. 1093 (1997) (quoting 29 C.F.R. § 1630.2(i)). The term "substantially limits," means being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. Id. (quoting 29 C.F.R. § 1630.2(j)(3)(i)). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Id.

The district court held that Moreno's carpal tunnel syndrome does not constitute a "disability" as defined by the ADA because he presented no evidence that his condition has substantially limited a major life activity, i.e. his ability to work. Furthermore, the district court added, he does not meet

7

the definition of a qualified person with a disability because he is not otherwise qualified for the position of Target Device Servicer because it requires tasks which Moreno himself has acknowledged he is incapable of performing. Finally, the district court noted that in order for an employer to be required to make a reasonable accommodation of a reassignment, a position must first exist and be vacant. Foreman v. Babcock & Wilcox, 117 F.3d 800, 810 (5th Cir. 1997). An employer is not required to create a position for the employee. Chiarai v. City of League City, 920 F.2d 311, 318 (5th Cir. 1991).

We agree with the analysis of the district court. Moreno has proffered no evidence that his carpal tunnel syndrome has substantially limited his ability to work. His condition has simply precluded him from performing the particular job of Target Device Servicer, and we have held that such is not enough to constitute a substantial limitation in the major life activity of working. See e.g., Bridges 92 F.3d at 332; Price v. Marathon Cheese Corp., 119 F.3d 330, 336 (5th Cir. 1997); 29 C.F.R. § 1630.2(j)(3)(i). Furthermore, the Army did make significant attempts to reassign him to positions where his condition would not affect his ability to perform, and in fact successfully did so on at least one occasion, when he was retrained and given a position at the Directorate of Logistics. When this position was subsequently eliminated due to a work force reduction, the Army continued its attempts to accommodate Moreno in finding a suitable vacant position which he was qualified for, but none were available. Foreman, 117 F.3d at 810. As we have held, the Army, at that point, was not required to simply create a position that Moreno could perform. Chiarai, 920 F.2d at 318. Therefore, the district court was correct in finding that Moreno failed to establish a prima facie case under the ADA and dismissing his claim.

<u>Title VII/EEO[3] Retaliation</u>

Moreno also claims that he was subjected to hostile treatment in retaliation for EEO activities. A plaintiff establishes a prima facie case of retaliation under Title VII by showing that: (1) he was engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. <u>Dollis v. Rubin</u>, 77 F.3d 777, 781 (5th Cir. 1995); <u>Shirley v. Chrysler First, Inc.</u>, 970 F.2d 39, 42 (5th Cir. 1992).

Moreno asserts that he was fired and thus subjected to hostile treatment because of his involvement in EEO activities. However, he does not provide any support for these allegations. He merely concludes that retaliation was the basis for his termination. A conclusory allegation is insufficient to defeat a motion for summary judgment. <u>See</u> <u>Grimes</u>, 102 F.3d at 139.

Therefore, the district court was correct in holding that Moreno had not submitted sufficient proof to establish a prima facie case of retaliation under Title VII and defeat the Army's proof that he was terminated because he was unable to perform essential tasks of the available positions offered to him.

CONCLUSION

Because Moreno failed to establish prima facie cases under the ADEA, ADA and Title VII, the decision of the district court granting the Army's summary judgment motion to dismiss Moreno's claims was correct and is affirmed.

AFFIRMED.

---

[3] Equal Employment Opportunity.