IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-30866

EMMIT DUMAS,

Plaintiff - Appellant,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:05-CV-264

Before GARZA and ELROD, Circuit Judges, and HICKS,[*] District Judge.

PER CURIAM:[**]

Emmit Dumas ("Dumas") appeals the district court's grant of summary judgment to defendant Union Pacific Railroad Company ("Union Pacific") on Dumas' claims of retaliatory termination under Title VII and 42 U.S.C. § 1981. For the following reasons, we AFFIRM.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Dumas, an African-American, was employed by Union Pacific from 1995 until his termination in August 2004. He claims that he was terminated in retaliation for testifying on behalf of another employee, Eddie Bibbins ("Bibbins"), who had previously brought race discrimination charges against Union Pacific. In January 2003, Bibbins complained to Union Pacific management that one of his supervisors was using racial slurs. Union Pacific undertook an investigation of the charge (the "Bibbins investigation"). During this investigation, Joe Whalen, a Superintendent at Union Pacific, interviewed Dumas regarding Bibbins' allegations.[1] Dumas corroborated Bibbins' claims. Bibbins then filed an EEOC Charge, and eventually filed suit against Union Pacific in early 2004. Again, Dumas gave a statement supporting Bibbins' claims. The parties eventually settled the Bibbins action and it was dismissed with prejudice in September 2006.

In June 2003, shortly after Dumas' involvement in the Bibbins investigation, Dumas was elevated from the position of track foreman to track inspector. As a track inspector, Dumas was required to inspect Union Pacific track for compliance with the Track Safety Standard promulgated by the Federal Railroad Administration ("FRA") and to file an inspection report on the date any inspection was made. See 49 C.F.R. §§ 212.203 and 213.241. The FRA is charged with ensuring railroad compliance with the many applicable regulations.

In July 2004, FRA inspector Nick Roppolo performed a routine audit for an area covered by Union Pacific's Livonia Service Unit and which included the track for which Dumas was responsible. FRA regulations require track

---

[1] Pertinent to this case, Whalen left the Livonia Service Unit, where Dumas worked, in February 2004 and was replaced at that time by Monty Whatley, the Superintendent who eventually signed Dumas' letter of termination in August 2004.

inspectors to check with a dispatcher to ensure that the areas to be inspected are free of traffic during the time when inspections will be done. During the audit, Roppolo discovered that the track inspection records entered by Dumas did not match the authority dispatching records, which indicated that Dumas had performed track inspections on multiple occasions without receiving authority from the dispatch center for such inspections. The records entered by Dumas indicated that he had received proper authority from dispatch. Roppolo's audit report recommended the FRA impose fines against Union Pacific for the failure, and require Union Pacific to provide the FRA with written notice of remedial action taken in response to the violations.

Based on Roppolo's audit findings, Union Pacific charged plaintiff with a violation of General Code of Operating Rule 1.6, which proscribes employee dishonesty. A formal investigation, with Dumas aided by union representatives, was held in August 2004. The formal investigation resulted in a finding that Dumas engaged in dishonest conduct. If Union Pacific finds a violation of Rule 1.6 based upon an employee's dishonest conduct, the violation is a Level 5 out of 5 on Union Pacific's discipline scale. The recommended discipline for a Level 5 violation is permanent dismissal. After this investigation, Union Pacific decided to terminate Dumas. Monty Whatley, the Superintendent who replaced Joe Whalen, signed a letter of termination which was sent to Dumas. The letter indicated that Dumas was being terminated based on his dishonest conduct in violation of Rule 1.6. Dumas appealed the decision to the Public Law Board, which affirmed the termination decision.

Dumas then filed this action in federal court, claiming that he was unlawfully terminated in retaliation for his participation in the Bibbins investigation. Dumas alleged that his retaliatory termination violated the Louisiana Employment Discrimination Law, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. Union Pacific moved for summary judgment on the

retaliation claims. The district court granted summary judgment in favor of Union Pacific, adopting the recommendations of the magistrate judge, holding that Dumas failed to demonstrate a causal connection between Dumas' protected activity and his termination and thus did not establish a prima facie case of retaliation.

II

We review a district court's summary judgment ruling de novo, applying the same standard as the district court. Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004). A party is entitled to summary judgment "if the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party, in this case Dumas. See Hockman, 407 F.3d at 325. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. See LeMaire v. La. Dep't of Trans. and Dev., 480 F.3d 383, 387 (5th Cir. 2007).

III

Title VII forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or because the individual "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. See Burlington Northern & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)). We apply the evidentiary framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) to Title VII retaliation claims that rely on circumstantial evidence. See Turner v. Baylor Richardson Med. Ctr., 476

F.3d 337, 348 (5th Cir. 2007).[2] Under the McDonnell Douglas burden-shifting framework, a plaintiff must first present a prima facie case of unlawful retaliation. See Rios v. Rosetti, 252 F.3d 375, 380 (5th Cir. 2001). To establish a prima facie case, the plaintiff must show that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. See Turner, 476 F.3d at 348. A plaintiff need not show that the protected activity was the "but for" cause of the adverse action to make his prima facie showing. See Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).

If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. See Lemaire, 480 F.3d at 388. If the employer meets its burden and produces such a reason, the burden shifts back to the plaintiff. See id. At this point, the plaintiff can pursue two options. The plaintiff must show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (alteration in original); see Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-94 (2003) (holding that plaintiffs pursuing a mixed-motive theory should not face a heightened evidentiary burden). Under the pretext alternative, the

---

[2] While the plaintiff based his unlawful retaliation claims on both Title VII and 42 U.S.C. § 1981, we refer only to Title VII in this opinion. When a plaintiff pursues both as parallel causes of action, Title VII and § 1981 require the same proof to establish liability. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n. 2 (5th Cir. 1999). The plaintiff raises no issue with respect to his claim for retaliation under Louisiana law. As a consequence, the plaintiff has abandoned any claim for retaliation arising under Louisiana law. See Priester v. Lowndes County, 354 F.3d 414, 420 n.6 (5th Cir. 2004) (noting that an appellant "abandons all issues not raised and argued in its initial appellate brief").

plaintiff has the burden of proving that but for the discriminatory purpose, the adverse employment action would not have been taken. See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005). If the plaintiff pursues a mixed-motive theory, and shows that the plaintiff's protected characteristic or conduct was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the discriminatory animus. See Rachid, 376 F.3d at 312.[3]

There is no dispute that Dumas has satisfied the first two elements of his prima facie case. However, the district court ruled that Dumas failed to create a genuine issue of material fact as to whether there was a causal link between his protected activity and his termination, and thus concluded that Dumas' prima facie case failed as a matter of law.[4] "In order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." Manning v. Chevron Chem. Co., 332 F.3d 874, 883 (5th Cir. 2003). "[I]n determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." Gee, 289 F.3d at 346. While we focus on the ultimate decisionmaker, a plaintiff can make out a prima facie case by showing that other employees, with discriminatory motives, "had influence or leverage over the

---

[3] We question whether Dumas attempts to pursue a mixed-motive argument on appeal. His brief is unclear on the matter. We also question whether he raised a mixed motive argument below in opposing summary judgment. If he failed to do raise the theory below, it cannot be raised for the first time on appeal. See Turner, 476 F.3d at 347 (finding mixed motive theory waived on appeal because it was not presented until the plaintiff's motion for new trial). However, we need not answer these questions because, in any event as explained below, Dumas failed to make out a prima facie case of retaliation.

[4] The district court also ruled that Dumas failed to create an issue of fact as to whether his protected activity was a "but for" cause of his termination. Therefore, even assuming that Dumas satisfied the prima facie case requirements, the district court determined that Dumas could not meet the ultimate burden placed on him after Union Pacific proffered its legitimate, non-discriminatory reason for Dumas' termination. Because we agree with the district court's first conclusion as to Dumas' failure at the prima facie case stage, we need not reach its alternative conclusion.

official decisionmaker." Id.; see also Long v. Eastfield Coll., 88 F.3d 300, 307 (5th Cir. 1996) (noting that if the final decisionmaker serves as the "cat's paw" of those acting with retaliatory motives, the causal link remains intact).

Monty Whatley, the Superintendent who signed Dumas' notice of termination, started with the Livonia Service Unit about eight months after Dumas' involvement in the Bibbins investigation. Although Whatley was not a part of the unit when the investigation occurred, Dumas argues that others played a role in the decision to terminate him in retaliation for participation in the Bibbins investigation. Dumas contends that Joe Whalen, the Superintendent prior to Whatley, and two other employees senior to Dumas, Jerry Rugg and Dale Kriefels, influenced the termination decision.

However, Dumas fails to provide any evidence that these individuals influenced Whatley's termination decision, or that Whatley had knowledge of Dumas' participation in the Bibbins investigation. The record includes no deposition testimony from Whatley that would provide insight into what he knew at the time of Dumas' termination. The termination letter indicates only that Dumas was fired for dishonesty in violation of rule 1.6. Undisputed evidence shows that Whalen transferred out of the Livonia Service Unit and was replaced by Whatley in February 2004, six months prior to the FRA audit and Dumas' termination. As to Rugg, even assuming he played an influential role in the decision, his uncontroverted deposition testimony indicates that he did not know of Dumas' participation in the investigation at the time Dumas was terminated. Kriefels is the only Union Pacific employee that the evidence suggests had knowledge of Dumas' participation in the Bibbins investigation, the FRA audit, and Dumas' termination. However, Dumas offers no evidence that Kriefels made any suggestion to Whatley regarding termination, or that he relayed any information to Whatley regarding Dumas' involvement in the Bibbins investigation. Based on the summary judgment record, Whatley, the

final decisionmaker, had no knowledge of Dumas' involvement; and Kreifels, the only employee with the information to influence Whatley, did not attempt to do so.

While not determinative, the timing of an employer's adverse action can be considered in analyzing the causal link in a retaliation claim. See Gee, 289 F.3d at 346 n.3. Union Pacific terminated Dumas on August 27, 2004, nineteen months after his participation in the Bibbins investigation, which took place in January 2003. In his deposition, Dumas testified that prior to the FRA audit, he was never harassed, intimidated, demoted, or disciplined based on his participation in the Bibbins investigation. Further, the employment action that most closely followed Dumas' participation in the Bibbins investigation was a positive action: his June 1, 2003 promotion from Track Foreman to Track Inspector. While not conclusive, the lapse of time and the intervening positive employment action further weaken the already tenuous causal link between Dumas' protected activity and his termination. See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994) (noting that 18-month lapse and intervening raise showed that retaliatory motive was unlikely).

Dumas argues that a causal link may be implied because other Union Pacific employees committed similar violations but were not terminated. This argument overlooks the fact that Dumas is required to establish that he was terminated in retaliation for engaging in protected activity. The discipline exercised against other employees is inapposite because Dumas has not provided any evidence that the decisionmaker in his case had any knowledge of his protected activity, or that the decisionmaker was improperly influenced by someone who did have such knowledge.

Dumas' evidence fails to create a genuine issue of material fact as to whether a causal link exists between his protected activity and the adverse employment action taken against him, and thus he cannot make out his prima

facie case for retaliation.  Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Union Pacific.