Aslee **SMITH**, Plaintiff

v.

John E. **POTTER**, Postmaster General, United States Postal Service, Defendant.

Civil Action No. 3:07CV634L–JCS.

United States District Court, S.D. Mississippi, Jackson Division.

May 8, 2009.

Latrice Westbrooks, Jackson, MS, for Plaintiff.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant John E. Potter, Post-

master General, United States Postal Service, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Aslee Smith has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

Plaintiff Aslee Smith filed this action alleging claims against her employer, the United States Postal Service (USPS), for race and gender discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101 *et seq.*, and for breach of contract and intentional and/or negligent infliction of emotional distress. The United States has moved for summary judgment on all of these claims. In response to the Government's motion for summary judgment, plaintiff has explicitly conceded her claims for gender and age discrimination and for breach of contract. However, she maintains that the motion should be denied as to her remaining claims.

The following facts are undisputed. Plaintiff became employed by the Postal Service in November 1986. In 1997, she was diagnosed with carpel tunnel syndrome, which was deemed by the Office of Workers' Compensation Programs (OWCP) to be an on-the-job injury, as a result of which she was placed on limited duty status pursuant to Part 546.141 of the Postal Service Employee and Labor Relations Manual,[1] and offered the limited duty/rehabilitation position of Modified Distribution Clerk at the Jackson, Mississippi General Mail Facility, with hours of 10:50 p.m. to 7:00 a.m., and with Tuesdays and Wednesdays (Monday and Tuesday nights) off. Plaintiff accepted this position on May 24, 1997, and continued to work the referenced position and schedule until around 2000, when she bid on a position with the same job duties and hours, but with off days of Friday and Saturday (i.e., Thursday and Friday nights). From the record, it appears that plaintiff continued to work this schedule until April 2006, when Mary Gordon, identified by the parties as a Manager, In–Plant Support, presented her with a modified job offer for a position with the same job duties, but with hours of 10:00 p.m. to 6:00 a.m. and days off of Saturday and Sunday (i.e., Friday and Saturday nights). Plaintiff promptly accepted this offer because she wanted Friday and Saturday nights off. However, her immediate supervisor Diamond Taylor, upon learning of this modified job offer only after it had already been accepted by plaintiff, took the position that the offer had been extended in error by Gordon, who was not plaintiff's supervisor. In fact, two weeks earlier, on April 4, 2006, a modified job offer had been directed to plaintiff by Taylor which purported to

---

1. The Postal Service has certain obligations to injured workers who are eligible to receive benefits from the Office of Workers' Compensation Programs (OWCP). If the OWCP accepts the claim of an injured employee with permanent partial restrictions, then the USPS must find work for that employee consistent with that employee's restrictions. *See* 20 C.F.R. § 10.507(b) ("If the employee can perform restricted or limited duties, the employer should determine whether such duties are available or whether an existing job can be modified.").

Pursuant to Part 546.141 of the Postal Service Employee and Labor Relations Manual, when an employee has partially overcome a disability from a compensable an on-the-job injury, "the USPS must make every effort toward assigning the employee to limited duty consistent with the employee's medically defined work limitation tolerance."

change plaintiff's work hours from 1:00 a.m. to 9:30 p.m. (which would have had plaintiff working 20.5 hour shifts), but which did not change her days off. Plaintiff rejected this job offer because of the time discrepancy. On April 19, Taylor had directed that a corrected job offer be prepared setting forth work hours of 1:00 a.m. to 9:30 a.m., but again, not changing plaintiff's days off. In the meantime, though, Gordon had prepared a modified job offer which not only corrected the error in the hours as appeared in the April 4 offer but also changed the days off from Friday and Saturday to Saturday and Sunday.

Taylor promptly rescinded Gordon's modified job offer of Saturdays and Sundays off, and on May 3, presented plaintiff with a modified job offer returning her to Fridays and Saturdays off. In addition, Taylor and her supervisor, Robert Howard, met with plaintiff and her union representative on May 6, and advised her that the April 19 job offer had been rescinded and that she should report to work in accordance with the job offer of May 3. However, plaintiff refused to sign the May 3 modified job offer.

Another modified job offer returning plaintiff to Fridays and Saturdays off was sent to plaintiff on May 16, by regular and certified mail. Plaintiff refused and/or otherwise ignored these offers, as well. On May 18, a memo signed by Human Resource Manager Ted Woodall was presented to plaintiff from the Injury Compensation Office, again notifying her that the modified job offer of April 19 had been rescinded and that the new modified offer had been mailed to her, and informing plaintiff that she was scheduled to work on Saturday, May 20, at 10:00 p.m. Plaintiff, however, refused to sign the memo and, notwithstanding having been repeatedly informed that the April 19 modified job offer had been rescinded and a new job offer issued, plaintiff repeatedly refused to accept and/or sign the new modified offer and continued to report for work on Fridays (i.e., Thursday nights) and not report for work on Sundays (i.e., Saturday nights). Thus, when plaintiff arrived for work on Friday July 28, 2006, at Taylor's direction, she was sent home because it was not an authorized work day.

Immediately thereafter, on July 31, plaintiff contacted the EEOC, complaining of race, age, gender, retaliation and disability discrimination, based on her claim that Diamond Taylor "instructed [her] to leave the premises for refusing to sign an illegal job offer." Plaintiff also promptly sought medical care, ostensibly for depression and stress-related issues stemming from alleged mistreatment at work by Taylor.

Pursuant to instructions from her doctor, plaintiff did not return to work until October 2, 2006. When she did return to work, she continued to report for work according to the April 19 modified job offer, i.e., on Friday and Saturday and treating Saturday and Sunday as her days off. Thus, on November 9, Tunya Hill, Manager, Distribution Operations (plaintiff's acting supervisor), informed plaintiff in writing that effective November 18, she was expected to adhere to the modified job offer of May 16, with a schedule of 9:30 p.m. to 6:00 a.m. and with Friday and Saturday as her days off. Plaintiff disregarded Hill's notice and reported for work on Friday, November 23. On that day, Hill took plaintiff "off the clock" since it was not an authorized work day, and asked plaintiff to leave. When plaintiff refused to leave despite Hill's repeated requests, Hill contacted the police, who arrived and at Hill's request, escorted plaintiff from the premises. Plaintiff did not thereafter return to work, and on February 12, 2007, she filed a charge of discrimination, alleging race, gender, age, retaliation and dis-

ability discrimination. Following receipt of a notice of right to sue, she brought the present action.

 As plaintiff lacks direct evidence of discrimination, the analysis of her Title VII race discrimination claim is governed by a well-established *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) methodology:

A plaintiff must first establish a prima facie case of disparate treatment on the basis of race by demonstrating that: (1)[she] is a member of a protected class; (2)[she] was qualified for the position; (3) despite [her] qualification, [she] suffered an adverse employment decision made by a defendant; and (4)[she] was replaced by, or received less favorable treatment than, similarly situated non-African Americans.

*Wakefield v. State Farm Ins.,* 229 F.3d 1148, 2000 WL 1239170, 2 (5th Cir.2000) (table) (citations omitted). If the plaintiff demonstrates a prima facie case, the defendant employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas* ). If it does so, the inference of discrimination created by the plaintiff's prima facie case disappears, and the court focuses on the ultimate question of whether the employer intentionally discriminated against the plaintiff employee. *Id.* (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The employee demonstrates discrimination by showing either direct evidence of discrimination or, circumstantially, that the employer's articulation of a legitimate reason

for adverse treatment was pretextual. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817).

 Her claim for disability discrimination under the Rehabilitation Act involves the same burden-shifting methodology. *See Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir.1999).[2]

To qualify for relief under the Rehabilitation Act, a plaintiff seeking to establish a prima facie case of discrimination must show that (1) she has a disability; (2) she is an individual qualified for the job in question; (3) she worked for a program or activity receiving Federal financial assistance; and (4) an adverse employment decision was made solely because of this disability.

*McKay v. Johanns,* 265 Fed.Appx. 267, 268 (5th Cir.2008). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to show that it had a legitimate nondiscriminatory reason for taking the adverse employment action; and, if it provides such a legitimate nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff to show that the adverse action would not have occurred "but for" the protected activity. *See Calderon v. Potter,* 113 Fed.Appx. 586, 592 (5th Cir.2004).

Plaintiff in this case, being black, is a member of a protected class, and she was qualified for her position; defendant does not contend otherwise. Thus, she can establish these two elements of her prima facie case for race discrimination. In the court's opinion, however, she cannot establish the other elements of her prima facie race discrimination claim as it is manifest

---

**2.** Although plaintiff has purported to sue under the ADA, the federal government is not subject to the ADA and therefore, disability discrimination claims against the USPS must be brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796. *See Henrickson v. Potter,* 327 F.3d 444, 447 (5th Cir.2003) (no claim is permitted under ADA against the

USPS). However, "discrimination claims brought under the Rehabilitation Act are governed by the same standards as claims brought under Title I of the Americans with Disabilities Act of 1990 ("ADA")." *McKay v. Johanns,* 265 Fed.Appx. 267, 268 (5th Cir. 2008) (citing 29 U.S.C. § 794(d)).

both that plaintiff suffered no adverse employment action, and that she has not presented evidence sufficient to support a finding that she was treated less favorably than similarly situated non-black employees.

As for her disability discrimination claim, plaintiff is able to establish that she was qualified for her position and that she worked for a program or activity receiving federal financial assistance. However, the evidence clearly establishes that she did not have a disability and that she was not subject to an adverse employment action because of any disability or perceived disability.

■ In the context of discrimination claims under both Title VII and the ADA (or Rehabilitation Act), the Fifth Circuit has limited adverse employment actions to acts which affect compensation, duties and benefits. *Carthren v. RT Bossier Hotel Partners*, Civ. Action No. 07–2043, 2009 WL 57106, 4–5 (W.D.La. Jan. 8, 2009) (citing *McKay v. Johanns*, 265 Fed.Appx. 267, 268–69 (5th Cir.2008)). Under this standard, to establish a prima facie case of discrimination, a plaintiff must show that she was subject to an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating. *Id.* (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007)). As noted by the court in *Carthren*, in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006), "the Supreme Court abrogated the Fifth Circuit's adverse employment action standard in the *retaliation* context, redefining 'an adverse employment action as any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." ' " *Carthren*, 2009 WL 57106, at 4–5 (quoting *McCoy* ). *Burlington* does not appear to have changed the Fifth Circuit's "adverse employment action" definition or standard for *discrimination* claims, however. *See id.; see also Richardson v. St. Phillips College*, Civ. Action No. SA–08–CV–0054 FB(NN), 2008 WL 5273296, 2 (W.D.Tex. Dec. 19, 2008) (expressly applying "ultimate employment decision" standard to Title VII discrimination claim to find that assignment of professor to teach at affiliated campus rather than main campus did not constitute an adverse employment action where the employee's pay, benefits and level of responsibility remained the same).

■ Indeed, in *Grosskopf v. Potter*, No. 07–51397, —— Fed.Appx. ——, ——, 2008 WL 2884544, 1 (5th Cir.2008), a panel of the Fifth Circuit, citing the court's pre-*Burlington* opinion in *Watts v. Kroger Co.*, 170 F.3d 505, 511 (5th Cir.1999), affirmed a lower court's ruling that a change in a postal service employee's scheduled days off [3] did not constitute an adverse employment action so that the employee could not make out a prima facie case of employment discrimination under Title VII.[4] As

---

**3.** Ironically, the plaintiff in *Grosskopf* was a *Caucasian* employee who alleged that she was discriminated against on account of race when her scheduled off days were changed from Saturdays and Sundays to Fridays and Saturdays. The lower court ruled that "a change in scheduled-days-off is not an adverse employment action for the purpose of [her] employment discrimination claim based on … race." *Grosskopf v. Potter*, Civil Action No. SA–05–CA–0836 FB (NN), 2007 WL 2428151, 3 (W.D.Tex. Aug. 22, 2007).

**4.** The court does note that in *McKay v. Johanns*, 265 Fed.Appx. 267, 269 (5th Cir.2008), the court observed that it was "not entirely clear that this Circuit's formulations of the ultimate employment decision standard comports with the Supreme Court's characterization of the Title VII standard in *Burlington*," but the court found it unnecessary to decide the issue in the case under consideration because nothing in Title VII or the Supreme Court's *Burlington* decision "indicates that moving an employee to a smaller work station

suggested by the court's opinion in *Grosskopf*, the Fifth Circuit has long recognized that "a change in an employee's work schedule does not ordinarily represent an adverse employment action." *Otis v. Bd. of Sup'rs of Louisiana State Univ.*, 275 F.3d 47, 2001 WL 1268969, 1 (5th Cir.2001) (table); *Watts*, 170 F.3d at 511 (holding that changes in employee's work schedule did not rise to level of adverse employment decisions where change did not affect her pay); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (holding that merely changing an employee's working hours, without more, does not constitute an adverse employment action). Thus, plaintiff's claim that defendant discriminated against her on account of her race by forcing her to accept a schedule change and by having her removed from the workplace when she refused to work according to the schedule dictated by defendant, as a matter of law cannot succeed because these actions did not affect plaintiff's compensation, duties or benefits.

Even under the *Burlington* standard, the schedule change of which plaintiff complains would not constitute an adverse employment action. In *Burlington*, the Court cited a schedule change as an example of an action that may constitute an adverse employment action in a retaliation case, depending on the circumstances: "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *Burlington*, 548 U.S. at 69, 126 S.Ct. at 2415. Thus, in *McNeill v. City of Canton, Miss.*, Civil Action No. 3:06cv74

DPJ–JCS, 2008 WL 249437, 10 (S.D.Miss. Jan. 29, 2008), also a retaliation case, the court found that the plaintiff had arguably identified a materially adverse employment action under *Burlington* "[b]ecause the change in Plaintiff's work schedule interfered with Plaintiff's outside teaching commitment." Plaintiff's claim herein is that Taylor attempted to force her to return to working a schedule with off days of Friday and Saturday, the very same schedule she had worked for the preceding six years.[5] While plaintiff has indicated that she desired Saturdays and Sundays off, this was simply a matter of personal preference. There has been no allegation or suggestion that the schedule "change" imposed by Taylor, returning plaintiff to her original schedule of Fridays and Saturdays off, created any hardship for plaintiff or took advantage of any "unique vulnerability" of plaintiff. Under the circumstances, this was no adverse employment action. *See Thomas v. Potter*, 202 Fed. Appx. 118, 119 (7th Cir.2006) (finding plaintiff's assertion that shift change was undesirable or inconvenient did not rise to the level of a materially adverse employment action under *Burlington* where the plaintiff did not assert and record did not contain evidence that the plaintiff had "a unique vulnerability that the Postal Service knew about and sought to exploit by changing his shift schedule"); *Arredondo v. Flores*, Civil Action No. L–05–191, 2008 WL 4450311, 6 (S.D.Tex. Sept. 30, 2008) (where the only evidence was that employees' schedules were changed, court concluded that "[e]ven if the *Burlington* standard applies, a change in schedule, shift, and days off, in this circumstance, is insuf-

---

is the type of employment condition that Congress intended to be actionable."

**5.** Although it appears from the record that plaintiff did not return to work after the November 23 incident in which she was escorted

from the premises by police officers, plaintiff has not alleged that she was terminated, or constructively discharged, and hence certainly has not alleged a claim in this cause (nor filed an EEOC charge relating to any potential claim) for discriminatory discharge.

ficient to establish an adverse employment action"); *Robinson v. Paulson,* Civil Action No. H–06–4083, 2008 WL 4692392, 13 (S.D.Tex. Oct. 22, 2008) (observing that "[u]nder Title VII, 'being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment' ") (quoting *Smalls v. Allstate Ins. Co.,* 396 F.Supp.2d 364, 371 (S.D.N.Y.2005); *Miller v. Wachovia Bank, N.A.,* 541 F.Supp.2d 858, 866 (N.D.Tex.2008)) (change to employee's work schedule and assignment to tasks she had not previously been asked to perform did not constitute an adverse employment action); *cf. Aryain v. Wal–Mart Stores Texas LP,* 534 F.3d 473, 485 (5th Cir.2008) (negative treatment, undesired transfer to another department, undesirable break schedule, and assignment of more arduous and dirty jobs are not adverse employment actions in the retaliation context).

▇▇▇▇▇ Even if plaintiff could establish that she suffered an adverse employment action, she still cannot succeed on her race discrimination claim since she has presented no evidence tending to show that she was treated less favorably than similarly situated white workers. "To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." *Wheeler v. BL Dev. Corp.,* 415 F.3d 399, 406 (5th Cir.2005) (quoting *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir.1995)). In an effort to make this required showing, plaintiff, during the EEOC investigation and in her deposition in this case, initially identified two white employees, Kelli Rhinewalt and Larry Bridgers, as persons similarly situated to her who received better treatment than she received. However, as the Government pointed out in its motion, Bridgers was not similarly situated because, unlike plaintiff, he was a light duty employee (not a limited duty employee) and thus had never been offered a modified/rehabilitation/limited duty job. *See O'Connell v. Potter,* 274 Fed.Appx. 518, 520 (9th Cir.2008) ("light duty" employees not similarly situated to plaintiff, a "limited duty" employee).[6] And as the Government further noted, plaintiff acknowledged in her deposition that she did not know of any occasion when either of the claimed comparators, Rhinewalt (who was a limited employee like plaintiff) or Bridgers, failed to work their assigned schedules, reported for work on their scheduled days off, or were given but refused to accept a modified job offer, and she admitted she did not know if the Postal Service had ever attempted to change those employees' off days.

In response to the Government's motion, plaintiff apparently has abandoned her earlier assertion of Bridgers and Rhinewalt as alleged comparators; she does not mention them in her response and thus implicitly has conceded she has no evidence that either Rhinewalt or Bridgers was treated more favorably than she under nearly identical circumstances. Instead, she now claims that her alleged white replacement, Sinda Hall, was treated more favorably.

---

**6.** Employees who are injured on the job are put in limited duty positions in accordance with the Federal Employees Compensation Act, 5 U.S.C. Chapter 81. Employees who are injured while employed by USPS but whose injuries are not caused by their work may request light duty positions under the collective bargaining agreement between the USPS and the American Postal Workers Union. *See Webster v. Henderson,* 32 Fed.Appx. 36, 39 (4th Cir.2002). The USPS has different duties to workers in these distinct categories with respect to job assignments.

■ Since plaintiff has not alleged that she was discharged, much less that she was discharged on account of her race, plaintiff's allegation that she was replaced by a white person has no bearing on her prima facie case. Her charge, though, is not just that she was replaced by a white person, but that the white person who replaced her was treated more favorably in that, even though Hall had less time or seniority than plaintiff, she was given Saturdays and Sundays off. In this regard, plaintiff points out that Diamond Taylor claimed during the EEOC investigation that the reason she rescinded plaintiff's April 19 modified job offer for Saturdays and Sundays off and required plaintiff to return to a schedule with Fridays and Saturdays off was that if anyone was going to have Saturdays and Sundays off, employees with more seniority should have been given that option. Plaintiff seems to take the position that the fact that Hall had less seniority than plaintiff and yet was given Saturdays and Sundays off tends to show not only that a similarly situated white employee was treated more favorably than plaintiff, but also that the reason given by Taylor for rescinding plaintiff's April 19 modified job offer was false, and a pretext for unlawful discrimination.

■ Plaintiff has offered no competent evidence that Hall, her alleged replacement, had less seniority than plaintiff, or other limited duty workers who, under Taylor's proffered seniority explanation for her decision, should have been given priority consideration for a Saturday/Sunday off-days schedule. The only evidence plaintiff has offered is an affidavit from a former coworker, James Schuller, who states that Hall had "less time" than plaintiff. Yet there is nothing to suggest that Mueller has any personal knowledge or basis for personal knowledge of Hall's employment status or history with the USPS. The Government, on the other hand, has offered Hall's employment records, which show that she was hired by the USPS two years before plaintiff and thus had greater seniority than plaintiff. In short, the only competent record evidence refutes plaintiff's claim that Hall had less seniority than plaintiff.[7]

7. Since plaintiff has failed to establish her prima facie case, the court need not reach the question whether the USPS has articulated a legitimate nondiscriminatory reason for its actions (though it has certainly done so), or consider plaintiff's claim of pretext. The court would nevertheless observe that plaintiff has failed to demonstrate pretext. Plaintiff has offered Schuller's affidavit to refute Taylor's claim that seniority was a factor in assigning limited duty employees and a reason plaintiff's April 19 modified job offer was rescinded. Schuller declares, "Seniority is not relevant when it comes to job placement of a limited duty employee." However, Schuller was a clerical employee of the Postal Service who does not speak for or on behalf of the Postal Service and whose putative knowledge of the factors the Postal Service does or does not take into account in assigning employees cannot be other than hearsay and thus is appropriately disregarded. *See Hill v. Dept. Of Veterans Affairs*, No. 08–60532, —— Fed. Appx. ——, ——, 2009 WL 348767, 3 (5th Cir. Feb. 12, 2009) (inadmissible hearsay cannot be used to oppose summary judgment).

Taylor has testified additionally that she took staffing needs into account in setting the schedule and that she rescinded plaintiff's April 19 modified job offer and returned her to her regular schedule of Fridays and Saturdays off because she needed plaintiff at work on Saturdays and Sundays. Plaintiff contends that Taylor's explanation is false because on November 23, the day she was sent home, Taylor was seen doing work that plaintiff would have done had she remained. Plaintiff reasons that this evidence tends to show that she was needed for work on the very days Taylor refused to allow her to work. However, even if this evidence were interpreted in the manner suggested by plaintiff, it does not undermine Taylor's explanation that she had a greater need for plaintiff's presence on Saturdays and Sundays.

Based on the foregoing, the court concludes that plaintiff cannot prevail on her claim of race discrimination because she has not alleged that she suffered an adverse employment action, and because she has failed to present evidence to establish that she received less favorable treatment than any similarly situated white worker. Accordingly, defendant is entitled to summary judgment on this claim.

■ With reference to plaintiff's disability discrimination claim, the Government argues in its motion that plaintiff has not shown she suffered a disability within the meaning of the Rehabilitation Act, and further, that she cannot show that any other employee with no disability who was in a situation similar to hers received better treatment than plaintiff. To succeed on her claim of disability discrimination, plaintiff must prove that (1) she is "disabled" within the meaning of the Rehabilitation Act; (2) she is "otherwise qualified" (that is, she can perform the essential functions of the job with or without accommodation); and (3) the personnel action was taken by defendant because of her disability. *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir.1997); *Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981). In order to establish a disability, plaintiff must show that she (1) has a physical or mental impairment which "substantially limits one or more of such person's major life activities"; (2) has a "record" of such an impairment; or (3) is "regarded" as having such an impairment. 29 U.S.C. § 705(9)(B). "A physical or mental impairment that affects the claimant's ability to engage in a narrow range of jobs only or a particular job alone does not 'substantially limit' one or more major life activities." *Id.* "Major life activities are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means either the inability to perform a major life activity or a severe restriction on the ability to perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). The only alleged disability plaintiff has identified is carpal tunnel syndrome; yet she has presented no evidence that the physical limitations resulting therefrom substantially limit any major life activity. She has admitted, in fact, that her alleged disability does not impair her ability to perform the functions in her daily life, and has admitted, as well as demonstrated, that it has not affected her ability to work. Plaintiff cannot, therefore, establish her prima facie case and summary judgment will be granted for the Government on this claim. *See Moreno v. Brownlee*, 85 Fed. Appx. 23, 27–28 (5th Cir.2004) (employee failed to establish prima facie case of disability discrimination where he proffered no evidence that his carpal tunnel syndrome had substantially limited his ability to work and where proof was that his condition had simply precluded him from performing one particular job, which was "not enough to constitute a substantial limitation in the major life activity of working").[8]

■ In addition to her race and disability discrimination claims, plaintiff has alleged a claim for retaliation in violation of Title VII. Specifically, she alleges that Tunya Hill and Diamond Taylor "retaliated against her by having her escorted away from the premises of the Jackson Downtown Post Office on November 23,

---

**8.** The court notes that plaintiff has made no effort to respond to the Government's motion on her disability discrimination claim. Though in the court's view, she has effectively conceded the claim, she has not done so explicitly, as she did with respect to her gender and age discrimination claims; and for that reason only, the court addresses this claim.

2006," presumably for plaintiff's having made the earlier EEOC complaint regarding Taylor's having asked her to leave the premises on July 28, 2006. Title VII claims are analyzed using a modified version of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir.2001). To establish a prima facie case of retaliation, a plaintiff must show the following: (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002) (internal citation omitted). While "[t]he causal link required by the third prong of the prima facie case does not rise to the level of a 'but for' standard," *id.*, the plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation. *Ackel v. Nat'l Comm'n, Inc.*, 339 F.3d 376, 385 (5th Cir.2003).

■ The Government argues that plaintiff cannot make out a prima facie case of retaliation for prior EEO activity because she cannot show that Tunya Hill, the management official who made the decision on November 23, 2006 to place plaintiff off the clock and have her escorted from the premises, was aware of plaintiff's prior EEO activity. In fact, Hill testified in her EEO Investigative Affidavit that she was not aware of any prior EEO activity by plaintiff. The Government submits that without proof of such knowledge, or awareness, by Hill, plaintiff cannot establish her prima facie case. *See Santos v. Texas Workforce Com'n*, Civ. Action No. H–08–1869, 2009 WL 483132, 3 (S.D.Tex. Feb. 24, 2009) ("A prima facie case of retaliation under Title VII requires a showing that the decisionmaker was aware

of protected activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by that decisionmaker.") (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir.1999)); *Perches v. Elcom, Inc.*, 500 F.Supp.2d 684, 692–693 (W.D.Tex.2007) ("As part of the causation prong, a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity.").

■ For her part, plaintiff has admitted she has no proof that Hill knew of her prior EEO activity. She submits, however, that she can prove the required causal link based on proof that Hill, in having her removed from the premises on November 23, 2006, was acting under the direction of Diamond Taylor, who was obviously aware of plaintiff's earlier EEOC charge. The Fifth Circuit has held that "in determining whether an adverse employment action was taken as a result of retaliation, [the court's] focus is on the final decisionmaker." *Gee*, 289 F.3d at 346. Yet while the focus is on the ultimate decisionmaker, "a plaintiff can make out a *prima facie* case by showing that other employees, with discriminatory motives, 'had influence or leverage over the official decisionmaker.'" *Dumas v. Union Pacific R.R. Co.*, 294 Fed.Appx. 822, 826 (5th Cir.2008) (quoting *Gee*, 289 F.3d at 346). *See also Long v. Eastfield Coll.*, 88 F.3d 300, 307 (5th Cir. 1996) (noting that if the final decisionmaker serves as the "cat's paw" of those acting with retaliatory motives, the causal link remains intact).

The only evidence plaintiff has offered to support her claim that Hill was acting as the "cat's paw" of Taylor is Schuller's affidavit, in which he claims that he heard Taylor page Hill over the intercom and saw the two talking shortly before the police arrived and escorted plaintiff from

the building. Plaintiff posits that the two must have been talking about her. This is nothing more than speculation, however, and both Hill and Taylor have denied that Taylor either informed Hill of plaintiff's EEOC charge or that Taylor had any involvement whatsoever in Hill's decision to take plaintiff off the clock and have her removed from the workplace. As plaintiff has presented no evidence either that Hill knew of her EEO activity or acted at the direction of or was influenced by Taylor in having her removed from the premises, plaintiff cannot establish her prima facie case of retaliation and defendant is entitled to summary judgment on this claim.

Defendant also has moved for summary judgment on plaintiff's claim for intentional and/or negligent infliction of emotional distress. In response to the motion, plaintiff argues that she is entitled to recover emotional distress damages in connection with her Title VII claim for discrimination and retaliation pursuant to 42 U.S.C. § 1981a(b)(3) (allowing a Title VII plaintiff who wins a backpay award [to] also seek compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). This being her position, it follows that inasmuch as the court has concluded that defendant is entitled to summary judgment on plaintiff's Title VII claims, defendant is entitled to summary judgment on her attendant claim for emotional distress damages.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.