# United States Court of Appeals
## For the First Circuit

No. 02-1119

UNITED STATES,

Appellee,

v.

PATRICK M. VIGNEAU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Boudin, Chief Judge,
Bownes, Senior Circuit Judge,
and Lipez, Circuit Judge.

Judith H. Mizner for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Margaret E. Curran, United States Attorney, and Richard W.
Rose, Assistant United States Attorney, were on brief for appellee.

July 28, 2003

**BOWNES, Senior Circuit Judge**. This is the third appeal that defendant-appellant Patrick Vigneau ("Vigneau") has brought before this court in relation to his March 1998 convictions on multiple federal charges for his participation in a drug distribution scheme. Vigneau argues that (1) there was an error in his sentencing which resulted in an additional 38 months incarceration; (2) the district court's sentence exceeded the statutory maximum in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000); and (3) the district court erred in denying his motion for a new trial based on newly discovered evidence. Because we find none of Vigneau's arguments persuasive, we affirm.

## I. BACKGROUND

In order to understand this appeal we present the relevant facts which have been recited in greater detail in previous opinions. See United States v. Vigneau, 187 F.3d 70, 72-74 (1st Cir. 1999), cert. denied, 528 U.S. 1172 (2000) ("Vigneau I"); United States v. Vigneau, 2 Fed. Appx. 53 (1st Cir. 2001) (per curiam) ("Vigneau II"). From February 1995 to the end of that year, Vigneau and Richard Crandall ("Crandall") coordinated a drug venture whereby Crandall shipped marijuana from Texas to Vigneau in Massachusetts and Rhode Island. Vigneau, with the help of others, redistributed the drugs to retail dealers in the Northeast. Vigneau and others transmitted some of the proceeds of the drug sales through Western Union money orders to Crandall in Texas. The

-2-

transfers served the dual purpose of allowing Crandall to share in the drug profits, as well as fund the purchase of more drugs. In Texas, the money transfers were often received by Timothy Owens ("Owens"), who assisted Crandall in acquiring drugs. Owens would cash the checks, and deliver the money to Crandall.

Vigneau and Crandall used a variety of methods to ship the marijuana. The drugs were initially shipped through commercial delivery services. In March 1995, Vigneau and Crandall purchased two vans so that they could transport larger quantities of marijuana themselves. One of the vans was registered in Vigneau's name, the other in Crandall's name. In addition, they also began using U-Haul trucks to transport the marijuana. The marijuana was shrink-wrapped in plastic and hidden behind furniture, which was then placed in the U-Haul trucks.

Authorities became aware of the drug smuggling venture. In September 1995, the Drug Enforcement Administration intercepted an Airborne Express package with several pounds of marijuana and some steroids addressed to a "David Weiber" at 2 Lyon Avenue in East Providence, Rhode Island, an address at which Vigneau's wife Donna Vigneau ("Donna") was living. This lead to the acquisition of a search warrant for the premises, as well as Vigneau's van which was parked outside. Authorities seized incriminating evidence from the residence, as well as a drug ledger from Vigneau's van. In December 1995, the Missouri Highway Patrol stopped Owens and Randy

Panahi ("Panahi") during a U-Haul delivery of marijuana to Vigneau. As a result, both Owens and Panahi agreed to cooperate secretly with the government. The government was also able to secure the cooperation of Crandall, who organized a meeting with Vigneau on December 28, 1995. At the meeting, which was recorded on videotape by the Federal Bureau of Investigation, Vigneau discussed how the authorities had discovered their U-Haul technique and made several references to his brother Mark Vigneau ("Mark").

In May 1997, the grand jury issued a sealed indictment charging Vigneau with numerous drug offenses. Also indicted were Vigneau's brother Mark, his wife Donna, Owens, Panahi, Joseph Rinaldi ("Rinaldi"), and Kyle Robson ("Robson"). Vigneau was tried in the district court, along with codefendants Mark, Donna, Rinaldi, and Robson. During the lengthy trial, the government presented testimony from over twenty witnesses, including Owens and Panahi who chronicled their dealings with Vigneau and the particulars of the drug smuggling scheme. The government also introduced physical evidence including seized marijuana, the December 28, 1995, videotape, the drug ledger seized from Vigneau's van, phone records revealing communications between the coconspirators, and tax records establishing a lack of other income. On January 13, 1998, upon motion by the government, the district court dismissed the case against Donna. During the trial, the only codefendant to testify on his own behalf was Robson. His

testimony included evidence against Patrick Vigneau. The other defendants did not testify.

On March 2, 1998, a jury found Patrick Vigneau guilty of: engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count 1); possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841 (Counts 3 and 4); attempting to possess with intent to distribute, in violation of 21 U.S.C. § 846 (Count 5); conspiring to distribute marijuana, in violation of 21 U.S.C. §§ 846 & 846(a)(1) (Count 6); conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) & 1956(a)(1)(A)(i) (Count 7); and engaging in 21 individual counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 8-28).

Vigneau's brother Mark was found guilty of conspiracy to distribute marijuana, conspiracy to commit money laundering, and money laundering, and sentenced to 97 months in prison. Mark was acquitted on eleven counts of money laundering. Mark appealed and we vacated the judgment and sentence, and remanded for a new trial if the government wished to pursue one. See United States v. Mark Vigneau, 187 F.3d 82, 88 (1st Cir. 1999). The government declined, and the district court dismissed the indictment against Mark. As for the other codefendants in Vigneau's trial, Robson was found not guilty, while Rinaldi was found guilty on all counts and sentenced to 46 months in prison.

In Vigneau's first appeal, we affirmed his conviction on all counts except the 21 individual money laundering convictions. We vacated the money laundering convictions because they were based on inadmissible hearsay and we remanded the case for resentencing. See Vigneau I, 187 F.3d at 79, 82. Prior to resentencing, the Probation Department issued a revised presentence report ("revised PSR") that was identical to the original PSR except that it referred to our decision in Vigneau I. At resentencing, Vigneau stated that although he was "not trying to reargue the conviction at this point," he might challenge his CCE conviction in a post-conviction motion. Vigneau was sentenced and he filed a timely notice of appeal.

In Vigneau's second appeal, he raised two arguments which he renews in this appeal. Vigneau challenged for the first time the revised PSR by arguing that he was incorrectly attributed one criminal history point for convictions in Rhode Island state court for assault and malicious destruction of property. Vigneau claimed that these charges had actually been dismissed. We held that his argument lacked merit and that he had waived all objections to the revised PSR by failing to object to the contents of the PSR before his original sentencing. Vigneau also challenged his sentences for the marijuana offenses on Apprendi grounds. Among other things, he argued that he should have been sentenced for violating 21 U.S.C. § 841(b)(4), which carries a maximum sentence of one year

-6-

imprisonment. We disagreed, finding that he should have been sentenced for violating 21 U.S.C. § 841(b)(1)(D), which carries a maximum sentence of five years for offenses involving less than 50 kilograms of marijuana. Because Vigneau's sentence exceeded the five year maximum sentence allowable by section 841(b)(1)(D), we vacated his sentences on Counts 3-5 and remanded for resentencing.

Prior to his second resentencing, Vigneau filed a number of intervening pro se motions. In these motions, Vigneau raised the same arguments regarding Apprendi and his criminal history score that we decided in his second appeal. Vigneau also argued that he should receive a new trial because of newly discovered evidence in the form of testimony from former codefendants as to whom charges had ultimately been dismissed. At resentencing, the district court denied all of Vigneau's motions. Vigneau appeals the denial of these motions.

## II. DISCUSSION

We do not need to consider the merits of Vigneau's arguments regarding Apprendi and his criminal history score, because this court has discussed and decided them in the Vigneau II opinion and they are therefore foreclosed under the "law of the case" doctrine. This doctrine is a "prudential principle that 'precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided.'" Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998) (quoting Cohen v. Brown

-7-

Univ., 101 F.3d 155, 167 (1st Cir. 1996)). One aspect of the law of the case doctrine is the "mandate" rule, which requires a district court to follow the decisions of a higher court. See Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002); see also United States v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir. 1991) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand." (emphasis in original)). There are a variety of important policy reasons for this doctrine, including promoting "proper working relationships between trial and appellate courts and judicial economy." United States v. Ticchiarelli, 171 F.3d 24, 28-29 (1st Cir. 1999); see also Ellis, 313 F.3d at 647 (examining in depth the policies behind the doctrine and stating that "the presumption against reconsideration is even stronger when the challenge arises on collateral attack of a criminal conviction").

As stated previously, Vigneau's arguments concerning his criminal history category and the alleged Apprendi violation have been heard and rejected by this court before. See Vigneau II, 2 Fed. Appx. at 53. In Vigneau II, we held that his arguments on these points lacked merit. Because this court has previously decided against Vigneau on the same issues, "the law of the case" doctrine applies, and the district court was correct in not revisiting these claims.

-8-

The law of the case doctrine is, however, not an absolute bar to reconsideration and may "tolerate a 'modicum of residual flexibility' in exceptional circumstances." United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993) (quoting Rivera-Martinez, 931 F.2d at 151). Because the mandate rule is a specific application of the law of the case doctrine, it is subject to the occasional exception when justice requires. Id. This is true "even within the particular strictures of a remand for resentencing." Ticchiarelli, 171 F.3d at 29. For a court to resurrect an issue on remand, the proponent of reopening an already decided matter must accomplish one of three things: "show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Bell, 988 F.2d at 251; Rivera-Martinez, 931 F.2d at 151.

Vigneau attempts to fit his challenge to his criminal history category within the exception to the law of the case doctrine for blatant errors that result in serious injustice.[1] Specifically, Vigneau argues that the revised PSR incorrectly attributed one criminal history score point to him for convictions in Rhode Island

---

[1]Vigneau has not claimed that his Apprendi argument fits within any of the exceptions to the law of the case doctrine. Therefore this claim has been waived. See United States v. Chapdelaine, 23 F.3d 11, 13 (1st Cir. 1994).

-9-

State Court of assault and malicious destruction of property that he claims were actually dismissed. Vigneau argues that with the addition of this criminal history score point, he was placed in criminal history category III instead of criminal history category II, and thereby received an additional 38 months imprisonment. To support his claim, Vigneau points to a paragraph of the revised PSR that appears to show that the charges were dismissed. He also offers a computer print-out of a motion filed by the State of Rhode Island which appears to indicate that these charges were dismissed.

We are not persuaded by Vigneau's arguments relating to the print-out and the paragraph in the revised PSR which he alleges prove that the charges were dismissed. On its face, it appears that the print-out would support Vigneau's contention. The key text of the motion to dismiss, however, was written in hand and did not appear in the version of the computer print-out submitted to the court by Vigneau. This handwritten motion clearly established that Vigneau was convicted of the charges at issue, but that the prosecution dismissed a third related charge that is not relevant to this appeal. The defendant used the incomplete print-out to support his claim that he was entitled to a criminal history category of II rather than III which was used. Under the evidence that applied, no blatant error or any error was made.

We now turn to Vigneau's argument that the district court erred in denying his motion for a new trial based on newly

available evidence.  See Fed. R . Crim. P. 33.  Vigneau argues that he is entitled to a new trial based on newly available testimony from former codefendants who were unable to testify at trial. Vigneau asserts that this testimony would demonstrate an absence of evidence that he organized, managed or supervised five or more people as required to support a CCE conviction.  See 21 U.S.C. § 848(c)(2)(A).

Before addressing the merits of Vigneau's claim, we note that Vigneau unsuccessfully challenged his CCE conviction in a prior appeal.  In Vigneau II, the appellant challenged his CCE conviction on sufficiency of evidence grounds.  Vigneau claimed that the disposition of his accomplices' cases required the court to reverse his sentence because it established that he did not organize, manage or supervise the number of people required to support a CCE conviction.  We affirmed his CCE conviction, holding that "the evidence was sufficient to establish that Vigneau acted in a supervisory position with respect to at least five participants. This is so even if the court does not count those individuals not convicted."  Vigneau II, 2 Fed. Appx. 53.

Although Vigneau challenges his CCE conviction again in this appeal, his contentions regarding newly discovered evidence are novel and invoke different legal standards than the ones relied on in Vigneau II.  A defendant seeking a new trial based on newly discovered evidence must show that:  "(1) the evidence was unknown

-11-

or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980); see also United States v. Colon-Munoz, 318 F.3d 348, 358 (1st Cir. 2003).  A motion for a new trial must be denied if the proponent fails to meet any one of these factors. See United States v. Gonzalez-Gonzalez, 258 F.3d 16, 20 (1st Cir. 2001).

We review a district court's denial of a motion for a new trial for a manifest abuse of discretion.  See Colon-Munoz, 318 F.3d at 357; United States v. Montilla-Rivera, 115 F.3d 1060, 1064 (1st Cir. 1997).  "We give considerable deference to the district court's broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes 'new' evidence."  United States v. Falu-Gonzalez, 205 F.3d 436, 443 (1st Cir. 2000) (citation and quotation marks omitted).

Even if we assume that Vigneau can meet the first three Wright factors, we are not convinced that any of the new evidence proposed by Vigneau would probably result in an acquittal if he was retried. We note that satisfying the fourth prong of the Wright test is not an easy task for defendants.  To prevail on the fourth prong,

defendants must show an "actual probability that an acquittal would have resulted if the evidence had been available." <u>Gonzalez-Gonzalez</u>, 258 F.3d at 20.

In his appellate brief, Vigneau makes only general claims that the district court erred in denying his motion. While we can assume the witnesses who would provide testimony are those persons whose charges were dropped or whose convictions were ultimately reversed, the only specific codefendant whom Vigneau names is Donna Vigneau. However, Vigneau himself says that her testimony "<u>could</u> be relevant," but he does not indicate what her purported testimony would be. These sort of general statements, unsupported by any developed factual allegations do not support a finding that the expected testimony would probably have resulted in Vigneau's acquittal. <u>See</u> <u>United States</u> v. <u>Natanel</u>, 938 F.2d 302, 314 (1st Cir. 1991) (stating that a new trial based on newly discovered evidence cannot be based on "wishful thinking, rank conjecture, or unsupportable surmise").

While Vigneau's appellate brief does not specifically mention his brother Mark as a person who could provide new testimony, Vigneau argued this point in front of the district court at resentencing. Mark signed an affidavit in which he swears that he was advised by his attorney not to testify at trial. He further states that at no time was he ever "managed, controlled, directed, supervised or organized, by, Patrick Vigneau, in any activity,

-13-

including money laundering, drug distribution, etc."

We do not believe that Mark's testimony is enough to overcome the abundance of evidence that was presented against Vigneau at trial. First, Mark's statement only indicates that Vigneau never directly supervised him. Absent from his affidavit is any statement that suggests that Vigneau never managed, controlled, or supervised others. In addition, we stated in Vigneau I that there was "extensive direct and corroborating evidence that Patrick Vigneau was engaged in a drug smuggling scheme." 187 F.3d at 78. This evidence included testimony from Owens and Panahi who had both participated in the drug smuggling scheme with Vigneau. Moreover, the trial evidence linked Vigneau to at least nine other coconspirators. Of these, four plead guilty, one was found guilty by a jury, and one was never charged. The fact that charges against Donna and Mark were dismissed does not necessarily mean that a jury would likely acquit Vigneau. See United States v. Rogers, 121 F.3d 12, 16 (1st Cir. 1997) ("A not guilty verdict against one co-conspirator is not the equivalent of a finding that the evidence was insufficient to sustain the conspiracy conviction of a second co-conspirator."). Furthermore, in Vigneau II we held that the evidence against Vigneau was sufficient to support his CCE conviction even if the court did not include the individuals not convicted. 2 Fed. Appx. 53. In light of the weight of the evidence presented against Vigneau at trial, we cannot say that the

-14-

district court abused its discretion in denying Vigneau's motion for a new trial.

Finally, we reject Vigneau's argument that he was at least entitled to an evidentiary hearing before the district court denied his motion.  Requests for evidentiary hearings are granted at the discretion of the trial court.  See Colon-Munoz, 318 F.3d at 358.  Evidentiary hearings upon motions in a criminal case are the exceptions not the rule.  See United States v. Alicea, 205 F.3d 480, 487 (1st Cir. 2000).  For a district court to grant such a motion, "the party seeking a hearing must make 'a sufficient threshold showing that material facts [are] in doubt or dispute.'"  Id. (quoting United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990)).  Here Vigneau's motion and brief spoke only in general terms about the new evidence available to him, and therefore, the district court acted within its discretion when it decided the motion without an evidentiary hearing.

Vigneau's appellate journey has ended.  The decisions of the district court are **AFFIRMED.**