# United States Court of Appeals
## For the First Circuit

Nos. 08-2346
     08-2452

ANGEL DAVID MORALES-VALLELLANES,

Plaintiff-Appellant/Cross-Appellee,

v.

JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL,

Defendant-Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Baldock,* Senior Circuit Judge,
and Howard, Circuit Judge.

Miguel E. Miranda-Gutiérrez, was on brief for appellant/cross-appellee.
Michael P. Abate, with whom Marleigh D. Dover, Attorneys, Appellate Staff, Civil Division, U.S. Department of Justice, Michael F. Hertz, Acting Assistant Attorney General, Rosa E. Rodríguez-Vélez, United States Attorney, District of Puerto Rico, were on brief for appellee/cross-appellant.

May 11, 2010

_____

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiff-appellant/cross-appellee Angel David Morales-Vallellanes ("Morales") obtained a jury verdict in his favor on claims under Title VII alleging discrimination and retaliation by his former employer, John E. Potter, the United States Postmaster General ("Potter").  In a prior appeal, we limited Morales to pursuing claims based on three discrete incidents that were previously the subject of formal Equal Employment Opportunity Commission (EEOC) complaints, and expressly precluded him from seeking relief for a "plethora" of other allegations raised for the first time in the district court.  See Morales-Vallellanes v. Potter, 339 F.3d 9, 19 (1st Cir. 2003) [hereinafter "Morales I"].  Despite this limitation, the evidence presented at trial included numerous allegations of discrimination and retaliation that were well beyond the scope of our limited remand.  Nonetheless, the jury was instructed that Morales could only recover for his claims based on the three specific allegations addressed in the prior appeal.  On December 21, 2007, the jury returned a $500,000 lump-sum verdict in his favor, which was later reduced by way of statutory cap to $300,000.  See 42 U.S.C. § 1981a (b)(3)(D).  The trial court awarded an additional $64,504 in back pay.

Morales brought this appeal to challenge the sufficiency of the trial court's back pay award, as well as its decision denying him front pay.  On cross appeal, Potter contends that the

jury verdict cannot stand because Morales failed to prove that he suffered any materially adverse employment action capable of supporting his claims under Title VII. Potter also challenges the jury's damages award as grossly excessive and based on evidence that we previously excluded; contends that Morales was not entitled to back pay; and in various ways opposes Morales's contentions that his damages award was inadequate.

After careful consideration, we conclude as a matter of law that Morales has failed to prove that he suffered any material adverse employment action within the meaning of Title VII's discrimination or retaliation provisions. We therefore vacate the jury verdict and remand with instructions to enter judgment in Potter's favor.

## I.  Background

### A.  Facts[1]

We sketch only the basic facts essential to this appeal. Morales began his employment with the United States Postal Service ("USPS") in 1988 as a Distribution Clerk. In 1990, he was transferred to the USPS station in Caparra Heights, Puerto Rico. In 1995, Morales bid for and obtained the position of Distribution and Window Clerk. In this capacity, Morales typically performed back-office "distribution" duties, which included "business reply,"

---

[1]  Additional detail regarding Morales's allegations can be found in our prior opinion. See Morales I, 339 F.3d at 12-14.

"express mail," and "postage due" functions.  Because Morales worked the early shift and had an arm injury that limited the tasks he could perform without pain, Morales rarely performed "window" duties, which included customer interactions; nonetheless, he was trained to do so, did so on occasion, and those tasks were part of the job description he had bid for.

Beginning in approximately early 1996, Morales lodged several complaints with the Occupational Safety and Health Administration (OSHA) regarding dust accumulation, rodent infestation, and general unsanitary conditions at the Caparra Heights station.  Eventually, OSHA conducted a formal inspection and issued the USPS citations for various safety and health violations.  Around the same time, Morales also filed unrelated, employment-based complaints with the EEOC.  Morales alleged that his supervisors and coworkers began to take various retaliatory actions against him for filing these complaints, and to discriminate against him on account of his gender.  Only three such actions are relevant to this appeal.

First, in January 1996 Morales expressed interest in bidding for a Distribution and Window Clerk position that was expected to come with Saturdays and Sundays off, a coveted position given that many USPS employees had an irregular weekend schedule.[2]

---

[2]  At the time, Morales had Sundays and Mondays off.  Morales testified that at some point in 1996, he was given Saturday and Sundays off instead.

Thereafter, the USPS reclassified the position so that, when it was posted, it came with Thursdays and Sundays off instead. On February 15, 1996, Morales filed a precomplaint with the EEOC alleging that this reclassification was in retaliation for various complaints he had filed, including with the EEOC.[3] He alleged that the reclassification was intended to dissuade him from bidding for the position.

Second, on March 23, 1996 Morales's supervisor issued him a letter of warning for unsatisfactory performance due to an "abuse of coffee breaks," which was withdrawn from his personnel file about a week later. On April 25, 1996, Morales filed a second precomplaint with the EEOC alleging that a new coffee and lunch break policy at the Caparra Heights station unlawfully discriminated against male employees. Specifically, he complained that a female employee, Mayra Irene, was allowed to take longer breaks than permitted under the policy, while male employees were

_____

[3] The EEO complaint process provides an administrative forum for postal employees to resolve discrimination claims against the USPS. Postal workers alleging discrimination are required to file a "precomplaint" and consult with an EEO counselor. If the matter raised in the precomplaint is not resolved within the established 30-day counseling period, the employee is authorized to file a formal EEO complaint. Once the formal complaint is filed, USPS is compelled to take action within a specified time period. After this period expires, the employee is permitted to file suit in United States District Court.

Morales I, 339 F.3d at 13.

not.  He also alleged that on one occasion, his supervisor took Mayra Irene and another female administrative employee out to lunch, but returned late in violation of the policy.

Third, on April 9, 1996[4] Morales's business reply mail, postage due, and express mail duties were temporarily reassigned to a female employee, again Mayra Irene, while he was given "window" duties to perform.  Morales complained to the EEOC regarding this rotation of responsibilities, alleging that it was discriminatory and in retaliation for his previous complaints.

All three incidents were the subject of formal EEOC complaints which made their way through the administrative process, and were ultimately dismissed.  See Morales I, 339 F.3d at 18.

### B.  Proceedings Below

In 1997 Morales brought suit in the district court alleging that USPS officials had retaliated against him for his various EEOC complaints and had discriminated against him on the basis of his gender; that the USPS and Postal Workers Union officials breached their obligations under a collective bargaining agreement ("CBA"); and that he suffered an intentional infliction of emotional distress at defendant's hands.  The district court granted summary judgment in Potter's favor on all claims.

---

[4]  Contrary to his initial allegations, Morales testified that this incident may have occurred in May 1996.

In Morales I, we affirmed the district court in most respects, but disagreed with its conclusion that the acts of discrimination and retaliation Morales had alleged as violations of the CBA were not actionable under Title VII. We determined, however, that many of the allegations of harassment and retaliation Morales relied on to support his federal claims had never been the subject of a formal complaint to the EEOC, and were therefore barred by Title VII's administrative exhaustion requirement. Accordingly, we remanded for the limited purpose of considering Morales's allegations of discrimination and retaliation arising out of the three incidents described above, which were addressed in the EEOC dismissal letters. Because no court had analyzed Morales's claims based on these events under the Title VII rubric, we declined to independently undertake that assessment and instead left that task to the district court in the first instance. We instructed as follows:

> Morales is precluded on remand from seeking relief for a plethora of other acts of discrimination and retaliation alleged in his amended complaint, including the discrete acts of bullying, intimidation, and vandalism by his co-workers, his seven-day suspension for violating the USPS uniform policy, his transfer from the Caparra Heights station, his day-long "expulsions" from work in February 1997, his constructive discharge, and his internal grievances against [the Postal Workers Union].

Morales I, 339 F.3d at 19.[5]

Following our remand, the defendants moved for summary judgment on the theory that Morales's remaining allegations failed as a matter of law to rise to the level of retaliation or discrimination within the meaning of Title VII, but the district court denied the motion in a margin order, which specified that the trial would be "limited to the three issues which survived appeal."[6]  Thereafter, the case was referred to a magistrate judge for trial, see 28 U.S.C. § 636, who, in a series of pre-trial orders, made it clear that the evidence presented at trial, and the claims submitted to the jury, would be limited to the three specific incidents identified in our prior opinion.

Morales testified at the trial, which lasted eight days. Much of his testimony and the evidence presented veered well beyond the clear lines drawn in our prior opinion and the trial court's various orders.  Thus, Morales told the jury about discrete acts of vandalism by his coworkers, including that they punctured his tires and poured sugar in his gas tank.

He described numerous acts of bullying and intimidation in the workplace.  Among other things, he testified that his

---

[5]  Morales moved for panel reconsideration, which was denied.

[6]  The district court did not address the merits of Potter's legal challenge, concluding instead that whether Morales suffered actionable discrimination or retaliation "involve[d] factual issues, as well as matters of credibility and weight of the evidence."

supervisors engaged in a campaign of harassment and retaliation by "put[ting] the employees against" him; that things became "really tense" in the office when he was investigated "for some supposed death threat [he] had given to another employee;" that the "environment became extremely violent against him;" that he "started receiving threats from other employees;" and that eleven coworkers wrote a letter accusing him of "always playing games physically with other employees in events where he kisses them or touches them by massaging their backs and necks." The letter was read into evidence.

Morales also told the jury that he was suspended for seven days for violating the USPS uniform policy. He testified that he was transferred from the Caparra Heights station because he "was allegedly a safety hazard and/or supposedly a homosexual." Morales's counsel questioned a former supervisor about Morales's day-long expulsions from work in February 1996, about his seven-day suspension for alleged violations of the uniform policy, and about whether Morales acted like a "homosexual man."

Morales spoke at length about the emotional distress he suffered as a result of ongoing discrimination and retaliation he endured at the USPS. He explained, "[T]he discrimination became something of everyday. I lost sleep. I spent days that I was on alert without sleeping, thinking about what new thing they're going to come up with the next day, what new thing." His treating

physician, Dr. Hoyos, opined that Morales suffered from an adjustment disorder caused by the cumulative effect of multiple stressors in the workplace. Of the ten stressors specifically identified by Dr. Hoyos, the allegedly discriminatory coffee break policy and rotation of window duties incident, combined, were a single stressor. The altered job posting was not identified as contributing to Morales's adjustment disorder.

In its charge, the trial court instructed the jury that it could only compensate Morales for the three specific incidents identified in our prior opinion. The verdict form which the jury returned indicated generally that it had found Potter liable for both discrimination and retaliation, but it did not apportion the damages award among the specific claims. Later, on Morales's motion, the court awarded back pay -- offset by the amount of disability payments plaintiff had been receiving since 1997, when Morales began to collect disability payments[7] -- and denied his request for front pay.

Both parties filed post-trial motions. Morales challenged the court's back pay award as too low, as well as its denial of his motion seeking front pay. Potter filed motions for judgment as a matter of law on account of Morales's alleged failure to prove actionable discrimination or retaliation; for remittitur

---

[7] Since that time, Morales has received approximately 66.33% of his USPS salary through the U.S. Department of Labor's Workers' Compensation Program. He technically remains a USPS employee.

or, in the alternative, a new damages trial; and challenging the back pay award.  See Fed. R. Civ. P. 50, 59(a), (e).  The district court denied Potter's motions, but granted in part Morales's motion seeking additional back pay due to a computational error in the original judgment.  Both parties filed timely appeals.

## II.  Discussion

### A.  Standard of Review

We review de novo the district court's denial of a defendant's motion for judgment as a matter of law. Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 57 (1st Cir. 2005).  Potter's primary challenge focuses on the legal sufficiency of Morales's claims alleging discrimination and retaliation.  He contends Morales has failed to prove that he suffered any materially "adverse employment action."  Often, whether an employee has suffered a materially adverse employment action capable of supporting claims under Title VII is a question of law for the court.  See Bergeron v. Cabral, 560 F.3d 1, 6 n.1 (1st Cir. 2009)(explaining that "the adversity vel non of that action is a legal question"); DeNovellis v. Shalala, 124 F.3d 298, 312 (1st Cir. 1997)(characterizing as a "legal question" whether plaintiff's "sham assignment constituted an adverse employment action within the meaning of Title VII").[8]  In this analysis, we

---

[8]  With respect to Morales's claims of retaliation, we are mindful that "the significance of any given act of retaliation will often depend upon the particular circumstances" of each case. Burlington

-11-

assume that the motivation for the employer's acts was discriminatory or retaliatory, and look only to the statutory significance of the harm these acts caused. Cf. Burlington Northern, 548 U.S. at 70.

**B. The Scope of the Claims**

As a threshold matter, the parties dispute the scope of the claims under review. Potter maintains that the claims are limited to the three incidents described in our prior opinion, while Morales asserts that, for various reasons, the claims submitted to the jury encompassed all of the "plethora" of unexhausted allegations which we excluded in the first appeal. One problem with Morales's argument is that the trial court's orders in limine, instructions to the jury, and discussion of Morales's claims in its post-trial order were all consistent with the

_____

N. & Santa Fe Ry. v. White, 548 U.S. 53, 69 (2006)("Context matters."); see also Oncale v. Sundowner Offshore Servs., 523 U.S. 81, 82 (1998)("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."). Thus, we review the factual circumstances bearing on the legal significance of these actions in the light most favorable to the verdict. Cf. Bergeron, 560 F.3d at 6 n.1 (noting that "the existence of an adverse employment action may be a question for the jury when there is a dispute concerning the manner in which the action taken affected the plaintiff-employee"(citing Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004)); see also Granfield v. CSX Transp.,Inc., __ F.3d __, 2010 U.S. App. LEXIS 5299, at *15 (1st Cir. Mar. 12, 2010)(in considering the denial of a party's motion for judgment as a matter of law, appellate courts "examine the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict").

limitation in our prior opinion. Though Morales contends that the district court ultimately agreed with his reading of the scope of the claims, he has identified nothing in the record to support that assertion.

Another problem with Morales's contention is that our holding in Morales I limiting his claims to the three incidents we have described is "the law of the case." See, e.g., United States v. Vigneau, 337 F.3d 62, 67 (1st Cir. 2003)("law of the case" doctrine is a "prudential principle that 'precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided'"); see also United States v. Rivera-Martínez, 931 F.2d 148, 150 (1st Cir. 1991) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand." (emphasis in original)). We have recognized limited exceptions to the application of this doctrine, see Vigneau, 337 F.3d at 68, but Morales never argued to the trial court that any of these limited exceptions should apply, and he does not do so here. This failure to confront the implications of our prior holding essentially forecloses Morales's attempt, raised for the first time in his opposition to Potter's cross-appeal, to broaden the scope of the claims now under review.[9]

---

[9] In any event, Morales's various contentions lack merit. Our independent review of Morales's submissions to the EEOC reveal that Morales did, in fact, include in a formal complaint the additional

-13-

Thus, while the trial court may have allowed Morales to introduce a broad range of evidence relating to his experience at the Caparra Heights station, including evidence relating to his excluded allegations, the jury was instructed that it could only compensate him for the three specific incidents that we remanded.[10]

---

allegation that his tires were punctured on two occasions while his car was parked in the Caparra Heights station employee parking lot. At the trial, Morales put into evidence a sworn declaration from a co-worker, Samuel Cora-Rivera, which stated that Cora-Rivera had heard that Morales's tires were punctured by a Caparra Heights supervisor as an act of retaliation. On that basis, Morales misleadingly asserts that, because these incidents were included in a formal EEOC complaint and were proven to be retaliatory, we should consider these acts "adverse employment actions" for purposes of his retaliation claim. Morales fails to point out, however, that Cora-Rivera testified at the trial and unambiguosly retracted his statements in the declaration, stating that "[a]ll of the paragraphs [in the sworn statement] are not true." We do not consider this incident in our analysis of Morales's Title VII claims.

[10] The jury instructions provided, in relevant part:

Pursuant to the Opinion of the Court of Appeals for the First Circuit . . ., plaintiff Morales's Title VII cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal EEO complaint, to wit;
1. Morales' allegation that Job Bid # 2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA complaints;
2. Morales allegation of sexual discrimination and retaliation arising on April 9, 1996 incident [sic] in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform;
3. Morales' allegation that the 'coffee and lunch break's policy' was not applied in an equal and nondiscriminatory manner.

-14-

"A basic premise of our jury system is that the jury follows the court's instructions," and therefore we assume, as we must, that the jury acted according to its charge. Refuse & Envtl. Syss., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 40 (1st Cir. 1991). Accordingly, we proceed to assess the legal sufficiency of only those claims actually submitted to the jury.[11]

## 1. Discrimination

Title VII provides that "[a]ll personnel actions" affecting federal employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). In order to present a legally viable claim of employment discrimination under the statute, a plaintiff must show, among other things, that he suffered an "adverse employment action" on account of a protected ground. García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008); see also George v. Leavitt, 407 F.3d 405, 411 (D.C. Cir. 2005) (explaining that "Title VII places the same restrictions on

---

See also Morales-Vallellanes v. U.S. Postal Serv., No. 97-2459, slip op. at 9 (D.P.R. Aug. 27, 2008)(post-trial order discussing limitations on claims submitted to the jury).

[11] We acknowledge that, with respect to the admission of evidence, it appears that the trial court was inexplicably lax in its enforcement of its pre-trial orders, and Potter routinely failed to object at trial. Nonetheless, contrary to Morales's contentions, we do not agree that Potter is therefore estopped from asserting that the jury award was limited to the three incidents we remanded, which were clearly delineated in the pre-trial orders and instructions to the jury.

federal [employers] as it does on private employers, and so we may construe the latter provision in terms of the former" (internal quotation marks omitted)).  An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace," Burlington Northern, 548 U.S. at 61-62, and typically involves discrete changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); accord Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) ("To be adverse, an action must materially change the conditions of plaintiffs' employ." (emphasis added)).  A materially adverse change in the terms and conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002).

Whether an employment action is materially "adverse" -- and therefore actionable under Title VII -- is gauged by an objective standard.  Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996).  "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."  Marrero, 304 F.3d at 23 (internal quotation marks omitted).

-16-

## 2. Retaliation

Unlike its private-sector counterpart, Title VII does not contain an express antiretaliation provision applicable to the federal government as employer. See 42 U.S.C. § 2000e-16(a). Nonetheless, we have assumed that the antiretaliation provision applicable to private employers operates to prohibit retaliation in the federal sector. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008); see also Gómez-Perez v. Potter, 553 U.S. 474, 128 S. Ct. 1931, 1941 n.4 (2008) (acknowledging, but declining to decide, the open question of "whether Title VII bans retaliation in federal employment").

As with a claim for discrimination, a plaintiff alleging workplace retaliation must prove, among other things, that he suffered an "adverse employment action" on account of a protected activity. See, e.g., DeCaire, 530 F.3d at 19; see also Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006)("In the absence of a finding that the plaintiff has suffered adverse action, a retaliation claim fails as a matter of law."). However, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern, 548 U.S. at 64; see also Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008)("[C]onduct need not relate to the terms or conditions of employment to give rise to a retaliation claim."). Rather, a

-17-

plaintiff may satisfy this requirement by showing that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern, 548 U.S. at 64.[12]

"This is an objective test and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010) (quoting Burlington Northern, 548 U.S. at 71). Examples of adverse employment actions in the retaliation context "include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008)(quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (9th Cir. 1993)). Minor

_____

[12] In Gómez-Pérez, the Supreme Court held that the Americans with Disabilities Act's (ADA) federal-sector provision, which "was patterned 'directly after' Title VII's federal-sector discrimination ban," prohibited workplace retaliation through its substantive antidiscrimination prohibition. See 128 S. Ct. at 1940. Potter thus maintains that Title VII's federal-sector provision bans workplace retaliation, if at all, only if it results in an adverse "personnel action[]," 42 U.S.C. § 2000e-16(a), which he contends means only those actions that affect employment or alter the conditions of the workplace. We do not reach this argument because we conclude that even under the Burlington Northern standard Morales has failed to prove he suffered any adverse employment action.

disruptions in the workplace, including "petty slights, minor annoyances, and simple lack of good manners," fail to qualify. Burlington Northern, 548 U.S. at 68.

### 3. Morales's Claims

#### a. The Coffee and Lunch Break Policy

The first set of claims brought by Morales, alleging both discrimination and retaliation, arises from his allegation that the Caparra Heights coffee and lunch break policy was not enforced in an equal and nondiscriminatory matter, insofar as certain female employees were, at times, permitted to take longer breaks than the policy provided for. Under the policy, employees were allowed to take either a half hour or an hour lunch break, plus a ten minute coffee break during each half of their shift. When Morales complained about the discriminatory enforcement of the policy, his supervisor began to require all employees to clock in and out each time they took a break.

However, even if two female employees were permitted to take longer breaks than Morales on account of their gender, such selective enforcement of the breaks policy had no material effect on Morales's employment and therefore cannot constitute discrimination within the meaning of the statute. He was not formally disciplined for violating the policy,[13] or denied the

_____

[13] While Morales received a letter of warning for taking an extended coffee break on March 22, 2006, the letter was removed from plaintiff's file just 5 days later. This preliminary action

-19-

opportunity to take breaks himself.  On these facts, we hold that the selective enforcement of the breaks policy fails to sustain a claim for gender discrimination.

Likewise, we conclude that the selective enforcement of the breaks policy fails to rise to level of actionable retaliation. Morales's retaliation claim includes an allegation that, following the submission of an EEOC complaint, his supervisor, Enrique López, closely monitored the lunch and coffee breaks Morales took.  He also testified that, by requiring that all employees clock in and out each time they went on break, López attempted to stir up other employees against him.[14]  Morales, however, was not treated differently than other employees in the application of the policy as a result of his complaint; indeed, his complaint rests on the assertion that all employees were treated equally (though they may

---

was insufficient to support a claim of discrimination.  See 29 C.F.R. § 1614.107(a)(5) (requiring agency to "dismiss" any administrative complaint that "is moot or alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory").

[14]  Specifically, Morales testified:

> And, in front of everyone, [López] said that, because someone had placed an EEO[C complaint], now everybody had to punch in their timecards for every time they would go out on a break, when they left on break, and when they came back.  Obviously, this was a policy that the employees did not like. And so, all of them . . . well, maybe not all of them, but most of them started to look at me bad.
>     It was a very smart way of putting the employees against me.

not have liked it).  Thus, the adverse action anchoring Morales's complaint of retaliation is essentially the relief he requested in his discrimination complaint, and therefore would not dissuade a reasonable employee from filing or supporting a charge of discrimination.  Cf. Burlington Northern, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

Accordingly, Morales's claims arising from the selective enforcement of the breaks policy fail as a matter of law because Morales suffered no material adverse employment action within the meaning of Title VII's discrimination or retaliation provisions.

### b.  Rotation of Responsibilities

Next, Morales asserts claims for both discrimination and retaliation arising from the "incident in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform."  Morales I, 339 F.3d at 18. We hold that this temporary rotation of Morales's preferred distribution duties to a female clerk fails to qualify as an adverse employment action for purposes of either claim.

Morales was required to perform "window" duties rather than "distribution" duties for only a limited period of time, those duties fell within his job description (indeed, which he bid for), and there was evidence that on other, albeit rare, occasions he had

performed "window" duties in the normal course of his employment. Cf. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1215 (11th Cir. 2008) ("Requiring an employee to perform her job is not a change in the terms, conditions, or privileges of her employment."). Morales himself testified that, "I was trained for [window duties]. I could do [them]. I was prepared to do [them]." Such a minor disruption in the tasks Morales preferred to perform cannot, as a matter of law, sustain his claim for damages under Title VII's antidiscrimination provision. See Marrero, 304 F.3d at 23 (secretary's permanent, lateral reassignment to work in same capacity for different boss did not rise to level of an adverse employment action where "her general job description and salary remained the same," notwithstanding the fact that she "was required to do more work, subjected to 'extreme supervision,' and forced to undergo a period of probation"); see also Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir. 2005) (explaining that "a lateral transfer that does not affect pay (or significantly affect working conditions) cannot be called discriminatory").[15]

---

[15] We emphasize that there was no evidence presented at trial that the rotation was permanent, or that he was divested of meaningful job responsibilities as a consequence. Cf. DeNovellis, 124 F.3d at 306 (explaining that "five-month assignment [of plaintiff] to a financial position for which he had no background and the concomitant deprivation of meaningful duties constituted an adverse employment action within the meaning of Title VII"). Rather, his testimony demonstrates that he experienced the sort of temporary "reassignment that involves only minor changes in working conditions [which] normally does not constitute an adverse employment action." Marrero, 304 F.3d at 23.

Nor can this temporary rotation of responsibilities qualify as an adverse employment action for purposes of his retaliation claim. In appropriate circumstances, disadvantageous work assignments may qualify as materially adverse, but Morales's temporary reassignment is a far cry from those situations where we have found actionable retaliation. See generally Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 95 (1st Cir. 2006) (finding a totality of assignments, which included a police officer's transfer for an "unusually long" duration to a "remote and solitary" duty site that was "regarded as punishment" by officers, to constitute adverse employment action).

While Morales testified that the window duties presented certain "physical difficulties" in light of his arm condition, he made it crystal clear that he was able to perform those duties "as long as it was not for a long time" and he did not state that he experienced any unique hardship as a result of performing "window" tasks. There is no evidence that window duties were more difficult, less prestigious, or objectively inferior to Morales's distribution duties; rather, the gravamen of Morales's complaint is that he preferred his regular assignment. Compare Burlington Northern, 548 U.S. at 71 (holding that permanent reassignment of a female forklift operator to track laborer was a materially adverse action where there was "considerable evidence that the track laborer duties were 'by all accounts more arduous and dirtier';

-23-

that the 'forklift operator position required more qualifications, which is an indication of prestige'; and that 'the forklift operator position was objectively considered a better job and the male employees resented [the plaintiff] for occupying it'").

Under the circumstances, we hold that the temporary rotation of Morales preferred window duties does not qualify as materially adverse and cannot support his claims under Title VII.

### c. The Altered Job Posting

Morales's final claim, alleging retaliation only, focuses on the altered job posting. He maintains that, because he filed a complaint with the EEOC, the USPS changed the days off that were expected to come with a certain Distribution and Window Clerk position when it was posted for bidding. There is no dispute that the only difference between Morales's position at the time of this incident and the position in which he expressed an interest was that the new posting was expected to come with Saturdays and Sundays off, but was ultimately posted with Thursdays and Sundays off instead. We conclude that this alteration of rest days was insufficient to dissuade a reasonable employee from filing or supporting a charge of discrimination.

In appropriate circumstances, not present here, a schedule change may operate to dissuade a reasonable employee from reporting workplace discrimination. See Burlington Northern, 548 U.S. at 69. In this case, however, there is no indication in the

record that changing the days off associated with the new posting affected Morales any more than it did other eligible bidders. See Lockridge, 597 F.3d at 473 (no adverse employment action where denial of office space "left [the employee] in no worse a position than that held by similarly situated faculty members"). Moreover, there is no evidence that Morales suffered any undue hardship as a result of continuing to have Sundays and Mondays, rather than Sundays and Saturdays, off. See Burlington Northern, 548 U.S. at 69 (explaining that "[a] schedule change in an employee's work schedule may make little difference to many workers, [but] may matter enormously to a young mother with school-age children"); see also Washington, 420 F.3d at 662 (finding flex-time schedule critical to employee with disabled child, and recognizing that actions "that would be harmless to most people [may] do real damage to select targets"). Rather, Morales testified that, as a result of the rotation, he continued to have Sundays and Mondays off rather than a normal weekend schedule, which he would have preferred. This is plainly insufficient to support a claim for retaliation under the statute. Cf. Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (no actionable retaliation where there was "no evidence to suggest [employee] suffered a materially significant disadvantage by having to work more Sundays and

Wednesdays," rather than his preferred schedule).[16] We note that Morales's own medical expert failed to identify the altered job posting as a stressor contributing to his adjustment disorder.

Thus, after careful consideration, we conclude that Morales has failed to prove that he suffered any adverse employment action capable of supporting his claims for discrimination or retaliation.[17] Accordingly, we vacate the verdict and remand to the district court with instructions to enter judgment as a matter of law in Potter's favor. No costs are awarded.

---

[16] Other courts confronting roughly similar circumstances have come to the same conclusion. Thomas v. Potter, 202 Fed. Appx. 118, 119 (7th Cir. 2006) (unpublished decision)(plaintiff's assertion that shift change was undesirable or inconvenient did not rise to the level of a materially adverse employment action under Burlington where the plaintiff did not assert and record did not contain evidence that the plaintiff had "a unique vulnerability that the Postal Service knew about and sought to exploit by changing his shift schedule"); Smith v. Potter, 629 F. Supp. 2d 644, 652 (S.D. Miss. 2009)(retaliation claim alleging that USPS "attempted to force [plaintiff] to return to working a schedule with off days of Friday and Saturday," which plaintiff had worked for preceding six years, did not constitute an adverse employment action under Burlington Northern even though plaintiff may have preferred Saturdays and Sundays off); Arredondo v. Flores, Civil Action No. L-05-191, 2008 U.S. Dist. LEXIS 77675, 2008 WL 4450311, *20 (S.D. Tex. Sept. 30, 2008) ("Even if the Burlington standard applies, a change in schedule, shift, and days off, in this setting, is insufficient to establish an adverse employment action").

[17] Even considering these incidents cumulatively, we still conclude that Morales has failed to establish that he suffered any adverse employment action within the meaning of Title VII's antiretaliation provision. See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 485 (5th Cir. 2008) (negative treatment, undesired transfer to another department, undesirable break schedule, and assignment of more arduous and dirty jobs are not adverse employment actions in the retaliation context).

-26-

**Vacated and Remanded**.