DIANA GRIBBON MOTZ, Circuit Judge,
concurring in part and dissenting in part:
I concur in Judge Gilman’s opinion with one exception. In my view, the text of the ADA and controlling precedent require the conclusion that ASWAN has alleged a cognizable ADA retaliation claim against VCU. ASWAN may not be able to prove this claim, but it should have been afforded the opportunity to do so. My colleagues err in affirming the district court’s dismissal of this claim.
I.
On February 17, 2009, ASWAN filed its first complaint in state court. After defendants removed the case to federal court and filed motions to dismiss, the district judge denied the motions without prejudice but ordered ASWAN to clarify the complaint in separately numbered counts identifying the “specific statute alleged to have been violated.”
On November 19, 2009, ASWAN filed its second amended complaint and in it alleges a retaliation claim against VCU in separately numbered counts and identifies the ADA as the source of this cause of action. Specifically, ASWAN alleges that sometime in 2008 or 2009, the Daily Planet (an affiliate of ASWAN) acquired a passenger van to transport homeless people from downtown to the Conrad Center; many of these homeless people were disabled. ASWAN alleges that VCU agreed to “provide some funding to the Daily Planet” to offset a portion of these transportation costs. ASWAN further alleges that after it filed its original complaint in February 2009, VCU retracted its “agreement” with the Daily Planet in order to “punish” ASWAN by (1) “depriving its members ... of the benefit of transportation”; and (2) “showing” ASWAN that “its decision to file a civil rights lawsuit against VCU had backfired, hurting the very homeless people” ASWAN seeks to serve.
II.
The ADA provides that “[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA].” 42 U.S.C. § 12203(a). To state an ADA retaliation claim, ASWAN must allege that (1) it engaged in protected conduct, (2) suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir .2001).
VCU does not maintain that it arrived at its decision not to provide funding for transportation to the Conrad Center independent from this lawsuit. Rather, VCU conceded at oral argument that there was a “causal link” between its decision not to honor the transportation funding agreement and the filing of this lawsuit by ASWAN. See also Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi, 104 F.3d 1004, 1011 (7th Cir.1997) (holding “suspicious timing” as “circumstantial” evi *352 dence to support retaliation claim). VCU maintains, however, that this causal link does not provide the basis for an ADA retaliation claim.
VCU’s principal contention on appeal is that ASWAN lacked any “reasonable, good faith belief’ that VCU violated the ADA and that ASWAN’S lawsuit therefore did not constitute the sort of activity protected by the ADA. As a fallback position, VCU asserts that its agreement to fund transportation to the Daily Planet constitutes a gratuitous benefit and so its decision to withdraw this benefit cannot amount to unlawful retaliation.
Given that the majority relies on VCU’s fallback position, I first address that argument and then VCU’s principal argument on this point.
III.
Five years ago, in the Title VII context, the Supreme Court interpreted precisely the same language as that at issue here— “discriminated against” — and held that it “refers to distinctions or differences in treatment that injure protected individuals.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The Court explained that Congress intended this broad language to “prevent[ ]” a public entity from “interfering ... with ... efforts to secure or advance enforcement of the” underlying statute. Id. at 63, 126 S.Ct. 2405. The retaliation must merely be “materially adverse” to a reasonable person, i.e. sufficient to “dissuade[ ] a reasonable [person] from” charging discrimination. Id. at 68, 126 S.Ct. 2405 (internal quotation omitted). Ultimately, “[c]ontext matters,” making discovery particularly appropriate to flesh out factually plausible allegations. Id. at 69,126 S.Ct. 2405.
Faithfully applying these principles seems to me to require the conclusion that ASWAN has alleged a clear case of ADA-barred retaliation. Revoking funding for transportation represents a “materially adverse” action that could dissuade a reasonable disabled homeless person from asserting his or her rights under the ADA.
Our holding in Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1484 (4th Cir.1996) (en banc), that revocation of gratuitous benefits fails to qualify as an adverse action for purposes of ERISA’s retaliation provision, does not counsel a different result. In Stiltner, we explained that Congress modeled ERISA’s retaliation provision on parallel language in the National Labor Relations Act (NLRA), and so we looked to the NLRA to determine the meaning of that language. Id. at 1482-84. It was this NLRA-focused inquiry that led us to conclude that revoking gratuitous benefits does not constitute adverse action for purposes of ERISA. Id. But that holding, which we based on the labor-specific statutory context that confronted us, provides little guidance here.
In interpreting the ADA, we must look not to unrelated labor statutes, but to Title VII of the Civil Rights Act. See A Helping Hand, LLC v. Baltimore County, MD, 515 F.3d 356, 362 (4th Cir.2008). Given that the ADA’s anti-retaliation provision is identical to Title VII’s, the standard laid out by the Supreme Court for purposes of Title VII controls in this ADA case.* See *353 Penny v. United Parcel Service, 128 F.3d 408, 417 (6th Cir.1997); Stewart v. Happy Herman’s Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir.1997). And under that standard, the retraction of gratuitous benefits constitutes adverse action. See Thompson v. Potomac Electric Power Co., 312 F.3d 645, 650-51 (4th Cir.2002) (noting that Title VII retaliation encompasses “any retaliatory act” that “adversely affected ... benefits” (internal quotation omitted)); see also Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir.2010) (noting that Title VII “adverse employment actions” include the imposition of “a less distinguished title” or “a material loss in benefits” (internal quotation omitted)); Passer v. Am. Chem. Soc., 935 F.2d 322, 331 (D.C.Cir.1991) (rejecting argument that cancellation of a voluntary symposium was the withdrawal of a “mere ‘gratuity’ ” and thus incapable of constituting retaliation).
IV.
Perhaps recognizing that its fallback argument lacks any doctrinal support, VCU principally argues that ASWAN’S retaliation claim fails because ASWAN assertedly had no “reasonable, good faith belief’ that the ADA had been violated. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir.2002). Specifically, VCU contends that ASWAN could not have reasonably believed that “[1] a hill is a ‘barrier’ under the ADA; [2] filing this suit years later could prevail; [3] a donor of land can be treated like a segregating zoning authority; or [4] segregating someone from ‘the downtown mainstream’ segregates them because of a disability.” Appellee’s Br. at 14. Each of these contentions fail.
First, governing regulations clearly prohibit public entities from “mak[ing] selections” for “determining the site or location of a facility” that “have the effect of excluding” the disabled. 28 C.F.R. § 35.130(b)(4). Thus, ASWAN could reasonably believe that selecting a hill for the location of a facility frequented by a substantial disabled population violates this regulation.
Second, limitations is an affirmative defense that a defendant, not a plaintiff, must prove; ASWAN opposed an “act or practice made unlawful” by the ADA, which limitations does not necessarily bar. Moreover, no case law exists assessing whether a clearly meritorious affirmative defense negates a “reasonable, good faith belief’ of an “act or practice made unlawful” by the ADA. Further, no appellate court had even settled the question of which statute of limitations applies in Virginia, making it hard for ASWAN to “reasonably believe” its claims time-barred given that the ADA itself does not prescribe a limitations period.
Third, a public entity that donates land may well be treated as a segregating zoning authority because the regulations prohibit “a public entity, in providing any aid, benefit, or service ... directly or through contractual, licensing, or other arrangements,” from denying a disabled person access to the benefit. 28 C.F.R. § 35.130(b)(l)(i)-(vii) (emphasis added).
Finally, the governing regulations also provide that a public entity may not “subject[ ]” a disabled person to “discrimination,” including segregationist policies. 28 C.F.R. § 35.130(a); see also § 35.130(d) (“A public entity shall administer services ... in the most integrated setting appropriate to the needs of [the. disabled].”); Olmstead v. L.C., 527 U.S. 581, 588-89,119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (Congress specifically identified “segregation” *354 of the disabled as a problem addressed by the ADA).
V.
In sum, I believe ASWAN has pled allegations sufficient to state an ADA retaliation claim. Accordingly, I would reverse the contrary judgment of the district court as to that claim.

 That Title VII generally governs employment discrimination does not render the Title VII standard any less applicable. The Supreme Court has specifically rejected the argument that the unique context of employment animates Title VII’s antiretaliation provision. See Burlington Northern, 548 U.S. at 64-67, 126 S.Ct. 2405. Instead, the Court has broadly construed that provision to encompass retaliation outside of the workplace, recognizing that the "primary purpose” of that provision is not to address employment discrimination per se, but instead to "maintain[] unfettered access to statutory remedial mechanisms.” Id. at 64, 126 S.Ct. 2405 (internal quotation *353 and brackets omitted). It is this concern— protecting access to a civil rights remedial mechanism — -that demands we give the ADA the same broad construction.